IN THE SUPREME COURT OF NORTH CAROLINA

No. 416A17

Filed 7 December 2018

WILLIAM HAIRSTON, JR.

v.

ASHWELL BENNETT HARWARD, JR.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 808 S.E.2d 286 (2017), affirming a judgment entered on 1 December 2015 by Judge Joseph N. Crosswhite in Superior Court, Davidson County. Heard in the Supreme Court on 30 August 2018.

*Maynard & Harris, Attorneys at Law, PLLC, by C. Douglas Maynard, Jr.; Higgins Benjamin, PLLC, by John F. Bloss; and Roane Law, by James M. Roane, III, for plaintiff-appellant.*

*Davis and Hamrick, LLP, by Kent L. Hamrick and Ann C. Rowe, for defendant-appellee Ashwell Bennett Harward, Jr.*

*Burton, Sue & Anderson, LLP, by Stephanie W. Anderson, for unnamed defendant-appellee Erie Insurance Exchange.*

*Pinto Coates Kyre & Bowers, PLLC, by Deborah J. Bowers and Andrew G. Pinto, for North Carolina Association of Defense Attorneys, amicus curiae.*

ERVIN, Justice.

The question before us in this case is whether the trial court erred by crediting a payment made to plaintiff William Hairston, Jr., under his own underinsured motorist coverage against the amount of the judgment that plaintiff obtained against defendant Ashwell Bennett Harward, Jr., arising from a motor vehicle collision. After

carefully considering the record in light of the applicable law, we hold that the trial court erred by crediting the amount of this payment against the amount that defendant owed to plaintiff under the judgment and remand this case to the Court of Appeals for further remand to the Superior Court, Davidson County, for further proceedings.

On 20 November 2009, defendant was driving an automobile that, as a result of defendant's negligence, collided with a motor vehicle operated by plaintiff at an intersection in Lexington. At the time of the collision, plaintiff was insured under an automobile liability insurance policy issued by Erie Insurance Exchange that included, among other things, underinsured motor vehicle coverage subject to a coverage limit of $250,000 per person,[1] while defendant was insured under an

---

[1] Plaintiff's policy provided, among other things, that:

> We will also pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle. We will pay for these damages only after the limits of liability under any applicable liability bonds or policies have been exhausted by payments of judgments or settlements, unless we:
>
> > 1. Have been given written notice in advance of settlement between an insured and the owner or operator of the underinsured motor vehicle; and
> >
> > 2. Consent to advance payment to the insured in the amount equal to the tentative settlement.

(Bold typeface deleted.)

automobile liability insurance policy issued by State Farm Mutual Automobile Insurance Company that was subject to a per person liability limit of $100,000.

On 27 July 2011, plaintiff filed a complaint against defendant alleging that the collision in which plaintiff was injured resulted from defendant's negligence and seeking a judgment against defendant encompassing compensation for past and future medical expenses, lost wages, permanent injuries, and pain and suffering. On 15 January 2013, plaintiff moved to amend his complaint to assert a medical negligence claim against his treating physician arising from the treatment that was provided to plaintiff following the motor vehicle accident, with this motion having been allowed on the following day. On 17 April 2013, Erie made an appearance in this case as an unnamed defendant. On 14 March 2014, plaintiff took a voluntary dismissal with prejudice of his medical negligence claim against his treating physician.

Plaintiff's case against defendant came on for trial before the trial court and a jury at the 11 August 2014 civil session of the Superior Court, Davidson County. On 14 August 2014, the jury returned a verdict finding defendant to be negligent and awarding plaintiff $263,000 in compensation for his personal injuries.

On 11 September 2014, Erie issued a check to plaintiff in the amount of $145,000, which, according to Erie, represented "the amount of [underinsured

motorist coverage to which plaintiff was entitled] under [plaintiff's] Erie policy."[2] On 15 September 2014, defendant filed a motion seeking to have the trial court determine the amount to be set off and credited against the amount that the jury had awarded plaintiff in which defendant alleged, among other things, that plaintiff had already received $3,000 from defendant's liability carrier and at least $30,000 from his treating physician arising from the settlement of plaintiff's medical negligence claim, with these amounts to be deducted from the jury's damage award prior to the entry of judgment. In addition, defendant, in light of the fact that Erie had waived its right to be subrogated to plaintiff's rights against defendant, sought to obtain a credit against the amount of damages determined to be appropriate by the jury in the amount of $145,000 arising from the payment that Erie made to plaintiff. On 3 October 2014, plaintiff executed a "settlement agreement and full and final release of all claims against Erie only." (All capital letters in original.) On 9 October 2014, State Farm sent plaintiff a check for $97,000.

On 16 October 2014, the trial court entered an order finding that "the parties agree that Defendant is entitled to setoffs or credits totaling $33,000.00," "that the judgment amount will be $230,000.00," and that prejudgment interest would cease accruing as of 1 October 2014. In addition, the trial court found that "[t]he parties continue to disagree over whether . . . to credit the judgment ultimately entered in

---

[2] The appropriateness of the making of this $145,000 payment and the manner in which it was calculated are not in dispute between the parties.

this case by the amount of the $145,000.00 underinsured motorists coverage payment made by [Erie] to Plaintiff" and, pursuant to an agreement between the parties, delayed making a determination regarding whether the amount of the payment that plaintiff received from Erie should be deducted from the judgment amount "until the mandate from the North Carolina Supreme Court in the case of <u>Wood v. Nunnery</u> . . . inasmuch as the <u>Wood</u> case may be dispositive of this disagreement between the parties." On 10 April 2015, this Court filed an opinion in *Wood v. Nunnery*, 368 N.C. 30, 771 S.E.2d 762 (2015) (per curiam), stating that discretionary review had been improvidently allowed in that case.

On 17 September 2015, plaintiff filed a response to defendant's motion for setoffs and credits in which he requested the trial court to enter judgment against defendant prior to considering defendant's motion for setoffs and credits and moving to strike an affidavit submitted by defendant's counsel in support of defendant's claim that Erie had waived its subrogation rights on the grounds that "[w]hether or not [Erie], as Plaintiff's UIM carrier[,] has waived its subrogation right (and reimbursement right) is not relevant to the judgment entered against a tortfeasor." In addition, plaintiff requested the trial court, in the event that it considered the affidavit or "other evidence on the waiver of subrogation," to authorize plaintiff "to take post-verdict depositions of appropriate Erie and State Farm personnel and their agents to determine . . . whether the doctrines of estoppel, waiver, unclean hands, or some other legal or equitable remedy preclude [Defendant Harward] and State Farm

from arguing such waiver would inure to the benefit of Defendant [Harward]." On 25 September 2015, Erie filed an affidavit stating that Erie had waived its subrogation rights against defendant. On 29 October 2015, plaintiff filed a motion seeking to have Erie's affidavit stricken or allowing post-verdict depositions to be taken, with this relief being sought on the same grounds that led to the filing of plaintiff's earlier motion to the same effect.

On 1 December 2015, the trial court entered an order allowing defendant's motion for credits and setoffs in which it concluded as a matter of law that "[Defendant] is entitled to credit for the $145,000.00 payment made by the UIM carrier." In reaching this result, the trial court, acting in reliance upon *Baity v. Brewer*, 122 N.C. App. 645, 470 S.E.2d 836 (1996), and *Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 363 S.E.2d 643, *disc. rev. denied*, 322 N.C. 113, 367 S.E.2d 917 (1988), focused upon "the common law principle that a plaintiff should not be permitted a double recovery for a single injury." The trial court distinguished the initial decision of the Court of Appeals in *Wood v. Nunnery*, 222 N.C. App. 303, 730 S.E.2d 222 (2012), in which the Court of Appeals held that payments made by the plaintiff's underinsured motor vehicle insurance carrier should not be credited to the defendant,[3] with the trial court emphasizing that in *Wood*, unlike this case, the

---

[3] In *Wood*, 222 N.C. App. at 308, 730 S.E.2d at 226, the Court of Appeals vacated a portion of the trial court's order and remanded the case to the trial court for further proceedings. The order that the trial court entered on remand in *Wood* was also appealed to and affirmed by the Court of Appeals, 232 N.C. App. 523, 757 S.E.2d 526, 2014 WL 640884 (2014) (unpublished), with this Court ultimately determining that it had improvidently

underinsured motorist carrier had not waived its subrogation rights. In view of the fact that "no subrogation rights remain[ed]" for Erie, the trial court determined that defendant was entitled to a credit for the amount that Erie had paid to plaintiff. Finally, the trial court made no ruling on plaintiff's argument that the payment that he had received from Erie should be treated as a collateral source on the grounds that "such issue would be more properly addressed by the Appellate Courts."[4] Based upon these findings and conclusions, the trial court entered a judgment providing that plaintiff have and recover $46,527.12 from defendant.[5] Plaintiff noted an appeal to the Court of Appeals from the trial court's judgment.

In seeking relief from the trial court's judgment before the Court of Appeals, plaintiff contended that the trial court's decision to reduce the judgment amount by

---

allowed discretionary review of the Court of Appeals' decision concerning the validity of the trial court's remand order in *Wood*. *Wood*, 368 N.C. at 30, 771 S.E.2d at 762.

[4] In addition, the trial court denied plaintiff's motions to strike the affidavits that had been filed for the purpose of informing the parties and the trial court that Erie had waived its subrogation rights and refused to authorize the taking of post-verdict depositions. The Court of Appeals affirmed the trial court's decisions with respect to these issues and plaintiff did not seek to bring them forward for consideration by this Court.

[5] The trial court calculated the amount that plaintiff was entitled to recover from defendant set out in the judgment by reducing the jury's $263,000 award to $230,000 based upon the parties' agreement that the judgment amount should be reduced by the $3,000 amount that had been advanced to plaintiff by State Farm and the $30,000 amount that plaintiff had received as a result of the medical negligence claim that plaintiff had asserted against his treating physician. After increasing the damage award by $58,777.52 in prejudgment interest, the trial court credited $97,000 against the judgment amount relating to the additional payment that plaintiff received from State Farm and the $145,000 payment that plaintiff received from Erie before ordering that plaintiff recover $46,527.12 in damages from defendant.

the $145,000 payment that plaintiff had received from Erie violated the collateral source rule, which prohibits a "plaintiff's recovery [from] be[ing] reduced . . . by some source collateral to the defendant," *Young v. Baltimore & Ohio Railroad Co.*, 266 N.C. 458, 466, 146 S.E.2d 441, 446 (1966), on the theory that the payment that plaintiff had received from Erie "is completely independent from" and, for that reason, collateral to, defendant.  In addition, plaintiff argued that the trial court's failure to determine whether the monies that plaintiff had received from Erie represented payment from a collateral source constituted an independent legal error, citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 1218, 18  L. Ed. 2d 288, 294 (1967) (stating that "[i]t is a judge's duty to decide all cases within his jurisdiction that are brought before him").  According to plaintiff, the trial court's order conflicted with the decision of the Court of Appeals in *Wood*, 222 N.C. App. at 303, 730 S.E.2d at 222, which, in plaintiff's view, required the trial court to reach a result diametrically opposed to the one embodied in the order that it entered in this case given that the Court of Appeals decided to refrain from crediting the defendant in *Wood* with the amount of the payment that the plaintiff had received from his own underinsured motorist carrier on the grounds that, "[b]y the plain language of N.C.[G.S.] § 1-239, [a] defendant is responsible for satisfying the judgment entered against him"; that "the amounts owed by defendant as the tortfeasor in this matter and the amount owed by Firemen's as an underinsured motorist carrier" had been conflated by the trial court; and that "[w]hether Firemen's agreed to waive its subrogation rights as

to defendant is a matter for resolution between Firemen's and defendant and is of no concern to plaintiff," quoting *id.* at 305, 730 S.E.2d at 224. In addition, plaintiff asserted that the fact that the underinsured motorist carrier in *Wood* retained subrogation rights did not mean that a situation involving payment made by an underinsured motorist carrier that did waive its subrogation rights should be treated any differently. As a result, plaintiff urged the Court of Appeals to reverse the trial court's judgment.

Defendant, on the other hand, argued before the Court of Appeals that "[w]ell-established North Carolina case law sets forth the common law principle that plaintiffs should not be permitted a double recovery for a single injury," with this principle being applicable "both when payments are made by joint tortfeasors and when payments are made by sources other than joint tortfeasors." According to defendant, this Court's statement in *Holland v. Southern Public Utilities Co.*, 208 N.C. 289, 292, 180 S.E. 592, 593-94 (1935), that "any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage, should be held for a credit on the total recovery in any action for the same injury or damage" should be deemed controlling in this case, in which "the payment by Erie . . . was made 'on account of' the injury claimed by [p]laintiff in the lawsuit." Any failure to order that the amount paid to plaintiff by Erie be credited against the amount owed to plaintiff by defendant would, according to defendant, permit "a double recovery, in contravention of North Carolina law." In defendant's view, the

Court of Appeals did not allow a double recovery for the plaintiff in *Wood* given the absence of any evidence that the underinsured motorist carrier had waived its subrogation rights.

Defendant argued that the underinsured motorist payment that plaintiff received from Erie should not be deemed subject to the collateral source rule in light of this Court's holding in *Williams v. Nationwide Mutual Insurance Co.*, 269 N.C. 235, 237, 152 S.E.2d 102, 105 (1967), that an insured cannot obtain a recovery from his or her uninsured motorist carrier unless he or she is "legally entitled to recover damages." According to defendant, *Williams* requires that the defendant's fault be established before the underinsured motorist carrier becomes liable to the plaintiff, rendering "the right to recover under a UIM endorsement" "derivative and conditional," citing *Braddy v. Nationwide Mutual Liability Insurance Co.*, 122 N.C. App. 402, 406, 470 S.E.2d 820, 822, *appeal dismissed and disc. rev. denied*, 343 N.C. 749, 473 S.E.2d 610-11 (1996). In defendant's view, a payment source that is "derivative and conditional" upon a defendant's liability cannot be considered collateral for purposes of the collateral source rule.

On 7 November 2017, the Court of Appeals filed a divided opinion holding "that the trial court did not err in allowing defendant Harward the credit against the judgment for . . . Erie's payment." *Hairston v. Harward*, ___ N.C. App. ___, ___, 808 S.E.2d 286, 288 (2017). As an initial matter, the Court of Appeals rejected plaintiff's argument "that UIM benefits are a collateral source, so defendant Harward cannot

reduce his tort liability for those benefits," on the grounds that the collateral source rule does not apply when neither party attempts to introduce or exclude evidence relating to a payment made by a collateral source at trial. *Id.* at ___, 808 S.E.2d at 290 (quoting *Wilson v. Burch Farms, Inc.*, 176 N.C. App. 629, 638, 627 S.E.2d 249, 257 (2006) (brackets, citations, and internal quotation marks omitted) (stating that "[t]he purpose of the collateral source rule is to exclude evidence of payments made to the plaintiff by sources other than the defendant when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff.") (emphasis omitted); *id.* at ___, 808 S.E.2d at 290-91 (citing and quoting *Badgett v. Davis*, 104 N.C. App. 760, 764, 411 S.E.2d 200, 203 (1991) (same), *disc. rev. denied*, 331 N.C. 284, 417 S.E.2d 248 (1992)).

After noting that "whether UIM coverage should be credited against payments made on a tort judgment when subrogation and the right of reimbursement have been waived is an issue this Court has not explicitly addressed," *id.* at ___, 808 S.E.2d at 291, the Court of Appeals held that Erie's waiver of its right to be subrogated to plaintiff's claims required treating Erie's payments to plaintiff as a credit against the amount of the judgment entered against defendant, *id.* at ___, 808 S.E.2d at 292. According to the Court of Appeals, its own statement in *Wood* that a defendant could not receive credit for a payment made by plaintiff's underinsured motorist carrier "[b]ecause of [the insurance carrier's] statutory right of subrogation" supported a decision to reach this result. *Id.* at ___, 808 S.E.2d at 291 (quoting *Wood*, 222 N.C.

App. at 307, 730 S.E.2d at 225).  The Court of Appeals believed that "factoring in subrogation" at the judgment stage "helps prevent a windfall profit" for plaintiff, citing *Baity*, 122 N.C. App. at 646-47, 470 S.E.2d at 837-38, which applied the rule enunciated in *Holland*, 208 N.C. at 292, 180 S.E. at 593-94, that "any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage should be held for a credit on the total recovery in any action for the same injury or damage" in order to prevent a plaintiff from recovering twice for the same injury.  *Hairston*, ___ N.C. App. at ___, 808 S.E.2d at 291-92 (quoting *Holland*, 208 N.C. at 292, 180 S.E. at 593-94).  As a result, the majority of the Court of Appeals affirmed the trial court's order.

Judge Hunter dissented from the majority's decision on the grounds that "Defendant's tort liability is a separate entity from . . . Erie's contractual obligation," so that Erie's "release[ ] from its contractual liability to Plaintiff . . . does not mean Defendant is released from the $263,000.00 judgment he owes Plaintiff."  *Id.* at ___, 808 S.E.2d at 293 (Hunter, Jr., J., dissenting).  In concluding that the trial court's order should be reversed, Judge Hunter placed principal reliance upon the Court of Appeals' decision in *Wood*, which he described as "essentially identical to the case at bar," *id.* at ___, 808 S.E.2d at 293, and N.C.G.S. § 20-279.21(b)(4), and which, according to Judge Hunter, "provides no language stating that a tortfeasor is entitled to a credit from a plaintiff's UIM insurer" or that "a tortfeasor has a right to avoid the enforcement of a judgment," *id.* at ___, 808 S.E.2d at 294.  Instead, Judge Hunter

-12-

stated his belief that N.C.G.S. § 20-279.2(b)(4) "reveals the North Carolina public policy of an injured party's right to either enforce or not enforce a judgment against a tortfeasor." *Id.* at ___, 808 S.E.2d at 294. In Judge Hunter's opinion, N.C.G.S. § 20-279.2 "balances the interests of the tortfeasor, its liability insurer, the injured victim and the [underinsured motorist] insurer" by allowing a liability insurer to "protect[ ] its insured" by requiring that insurer to "seek resolution of the claim within its policy limits," while, at the same time, "provid[ing] opportunities for the UIM [carrier] to recoup the payments made to its insured," effectively protecting the interests of the underinsured motorist insurance carrier and "the victim's contractual rights." *Id.* at ___, 808 S.E.2d at 294. Judge Hunter opined that allowing a tortfeasor to receive credit against the judgment amount based upon underinsured motorist payments would "upset[ ] the statutory balance among competing interests" and render "the statutory right of subrogation . . . meaningless." *Id.* at ___, 808 S.E.2d at 294. Plaintiff noted an appeal to this Court from the Court of Appeals' decision on the basis of Judge Hunter's dissent.

In seeking to persuade us to reverse the Court of Appeals' decision, plaintiff argues that "[t]he Court of Appeals erred when it failed to recognize that the collateral source rule is a substantive rule of law on damages in this State." In support of this contention, plaintiff asserts that "[t]he collateral source rule is well established in the common law and public policy nationally as both a rule of evidence and the substantive law on damages." According to plaintiff, the substantive component of

the collateral source rule is demonstrated by this Court's statement in *Young*, 266 N.C. at 466, 146 S.E.2d at 446, that "the plaintiff's recovery will not be reduced . . . by some source collateral to defendant." In plaintiff's view, "[t]he collateral source rule is a rule of evidence *because it is the substantive law of the State*," citing *Cates v. Wilson*, 321 N.C. 1, 5, 361 S.E.2d 734, 737 (1987) (stating that "a plaintiff's recovery may not be reduced because [of] a source collateral to the defendant"), and *Brown v. Griffin*, 263 N.C. 61, 65-66, 138 S.E.2d 823, 826-27 (1964). Plaintiff suggests that "this Court should clarify that the collateral source/benefit rule is a substantive law on damages in this State in addition to a rule of evidence."

Moreover, plaintiff urges this Court to "adopt the overwhelming majority rule that UM/UIM coverage is a collateral source/collateral benefit and does not reduce the amount a tortfeasor owes on a judgment." Plaintiff argues that, like health and life insurance, underinsured motorist coverage is independent of and collateral to compensation provided by tortfeasors and asserts that a failure to treat payments made by a plaintiff's underinsured motorist carrier as a collateral benefit provides a windfall to tortfeasors. "To the extent [that] one party may be entitled to a 'windfall,' " plaintiff contends that "sound public policy dictates that it be the injured victim . . . and not the negligent person who caused the injury."

In plaintiff's view, the relevant North Carolina statutory provisions, through which an underinsured motorist carrier has subrogation and reimbursement rights that "typically work hand in hand" with the collateral source rule to prevent a

plaintiff from receiving a double recovery, clearly indicate that underinsured motorist coverage should be considered a collateral source. Plaintiff argues that a contrary result "would extinguish the [underinsured motorist] carrier's statutory subrogation and contractual reimbursement rights." According to plaintiff, an underinsured motorist "carrier may still seek recovery of any overpayment through the exercise of its rights to subrogation or reimbursement," with the ability of the carrier "to recoup any overpayment" "divest[ing]" "insureds [ ] of any so-called 'windfall,'" quoting *Lunsford v. Mills*, 367 N.C. 618, 628-29 n.1, 766 S.E.2d 297, 304 n.1 (2014).

Defendant, on the other hand, argues that this Court should affirm the Court of Appeals' decision because plaintiff cannot be allowed a "double recovery for a single injury" and because underinsured motorist coverage is not a collateral source. Defendant asserts that there is "a crucial distinction between collateral sources recognized by North Carolina law and underinsured motorists coverage," with sources of payment such as health and disability insurance, social security payments, and unemployment benefits being categorized as collateral sources because they "are all independent of the tortfeasor." Defendant contends that this Court should not categorize payments from underinsured motorist carriers as a collateral source on the grounds that such a decision would enable plaintiffs to recover underinsured motorist benefits without having to show that the other driver was at fault, resulting in what amounts to "no-fault accident insurance." In defendant's view, this Court should uphold the Court of Appeals' decision on public policy grounds given that a

holding that underinsured motorist payments constitute a collateral source would likely result in increased automobile insurance premiums and fail to give "force and effect" to the jury's verdict and given that the General Assembly has not mandated that underinsured motorist proceeds be treated as a collateral source.

A careful review of the record reveals that no factual issues are in dispute between the parties. For that reason, the only issue before us in this case is whether the trial court and the Court of Appeals reached the correct legal conclusion with respect to whether defendant was entitled to have the amount that Erie paid to plaintiff credited against the judgment in light of the undisputed facts disclosed by the present record. "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) (citation omitted). As a result, the ultimate issue before us in this case is whether, following a de novo review, the trial court correctly decided to credit defendant with the payment made to plaintiff by Erie.

The proper resolution of this case hinges, in our opinion, upon the extent to which the payment made to plaintiff by Erie does or does not constitute a payment received from a collateral source.

> According to [the collateral source] rule a plaintiff's recovery may not be reduced because a source collateral to the defendant, such as "a beneficial society," the plaintiff's family or employer, or an insurance company, paid the plaintiff's expenses. *Id.* Rather, an injured plaintiff is

> entitled to recovery " '. . . for reasonable medical, hospital,
> or nursing services rendered him, whether these are
> rendered him gratuitously or paid for by his employer.' "

*Cates v. Wilson*, 321 N.C. at 5, 361 S.E.2d at 737 (ellipsis in original) (quoting *Young*, 266 N.C. at 466, 146 S.E.2d at 446); *see also* Restatement (Second) of Torts § 920A cmt. b (Am. Law. Inst. 1977) (stating that "[p]ayments made or benefits conferred by other sources are known as collateral-source benefits [and] do not have the effect of reducing the recovery against the defendant" and that "[t]he law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him"); *Collateral-Source Rule*, *Black's Law Dictionary* (10th ed. 2014) (defining "collateral-source rule" as "[t]he doctrine that if an injured party receives compensation for the injuries from a source independent of the tortfeasor, the payment should not be deducted from the damages that the tortfeasor must pay.  Insurance proceeds are the most common collateral source – Also termed *collateral- benefit rule*"); 1 Dan B. Dobbs, *Law of Remedies* § 3.8(1) at 372-73, (2d ed. 1993) (stating that "benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages").

As the Court of Appeals noted, "the collateral source rule excludes evidence of payments made to the plaintiff by sources other than the defendant when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff." *Hairston*, ___ N.C. App. at ___, 808 S.E.2d at 290 (majority

opinion) (emphasis omitted) (quoting *Burch Farms*, 176 N.C. App. at 638, 627 S.E.2d at 257 (brackets, citations, and internal quotation marks omitted)). Like "a reference to the presence or absence of liability coverage for defendant," *Spivey v. Babcock & Wilcox Co.*, 264 N.C. 387, 390, 141 S.E.2d 808, 811 (1965) (*superseded by statute*, N.C.G.S. § 97-10.2(e) (1991), *as stated in Frugard v. Pritchard*, 338 N.C. 508, 511, 450 S.E.2d 744, 745-46 (1994)), evidence that a plaintiff received certain benefits "is inadmissible because it is not only irrelevant but also incompetent," *id.* at 390, 141 S.E.2d at 812, given "the probability that juries will consider the availability of collateral sources as indicative of the lack of any real damages" and alter their verdicts accordingly, *Cates*, 321 N.C. at 10, 361 S.E.2d at 740 (citation omitted). In addition to treating the collateral source rule as one governing the admission or exclusion of evidence, this Court has given substantive effect to the principle that a plaintiff's recovery should not be reduced by a payment received from a collateral source.

In *Young*, this Court recognized that the collateral source rule is a substantive rule concerning damages. 266 N.C. at 466, 146 S.E.2d at 446. In that case, the admission of evidence tending to show that the plaintiff's medical expenses had been paid by his employer's hospital insurance was not challenged before this Court on appeal. *Id.* at 466, 146 S.E.2d at 446. Had a challenge been made to the *admission* of such evidence, *Young* could be fairly read as treating the collateral source rule as nothing more than a rule of evidence. However, the actual error that this Court

identified in *Young* involved the manner in which the trial court instructed the jury concerning the calculation of the plaintiff's damages. More specifically, this Court examined the correctness of the trial court's instruction that "[i]n this case the things you may consider in determining what amount you will award to the plaintiff, if you award him anything, are *actual monetary losses* he has had from medical expenses." *Id.* at 466, 146 S.E.2d at 446 (emphasis in the original). We concluded that this instruction was erroneous because, in light of the evidence that "the plaintiff's medical expenses had been paid by his employer as the result of hospital insurance carried for the benefit of its employees . . . the foregoing charge may well have led the jury to believe that no amount was to be included in its verdict on account of medical expenses unless paid by the plaintiff himself." *Id.* at 466, 146 S.E.2d at 446. In essence, we concluded that the trial court erred because, in instructing the jury concerning the substantive law governing the calculation of the plaintiff's damages, the trial court's instructions could have led the jury to reduce the plaintiff's recovery by the amount of his medical expenses that was paid by his employer-provided hospital insurance. In concluding that the trial court had erred in this manner, this Court necessarily treated the collateral source rule as a substantive rule of law concerning damages. Put another way, we would not have reached this result in the event that the collateral source rule is, as the Court of Appeals indicated, a simple rule of evidence. As a result, we must now determine whether payments received by a plaintiff who has purchased underinsured motorist coverage should be deemed to

be a payment from a collateral source that cannot be used to reduce the amount of the judgment that plaintiff is entitled to have entered against defendant.

Although the collateral source rule is a well-established principle of North Carolina law, this Court has not clearly enunciated the factors that should be taken into account in determining whether a payment source is or is not collateral to a defendant for purposes of the collateral source rule. On the one hand, we have long held that a payment made to an injured person by one person liable for an injury should be credited against a judgment entered against others who have been held liable for the same injury, rendering payments made by a joint tortfeasor to the plaintiff not subject to the collateral source rule. *See McNair v. Goodwin*, 262 N.C. 1, 4, 136 S.E.2d 218, 220 (1964) (stating that "[t]he remaining tort-feasors are entitled, however, to have the amount paid for the covenant [not to sue] credited on any judgment thereafter obtained against them by the injured party"). More generally, this Court stated in *Holland*, 208 N.C. at 292, 180 S.E. at 593-94, that "any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage should be held for a credit on the total recovery in any action for the same injury or damage." Although defendant places considerable reliance upon this language in arguing that the judgment amount in this case should be credited with the payment that plaintiff received from Erie, the continued viability of the collateral source rule clearly indicates that the quoted language from *Holland* cannot be properly understood as meaning that "any amount paid by anybody" that

benefits plaintiff or covers costs that plaintiff incurred as the result of a compensable injury must be credited against the judgment amount.[6]  *See Cates*, 321 N.C. at 4, 9, 361 S.E.2d at 737, 739 (holding that Medicaid benefits, checks received pursuant to the "Aid for Dependent Children" program, and child support payments constituted collateral sources); *Young*, 266 N.C. at 466-67, 146 S.E.2d at 446-47 (holding that medical expenses "paid by [the plaintiff's] employer as the result of hospital insurance carried for the benefit of its employees" should not be used to reduce the amount that the defendant owed the plaintiff); *Brown*, 263 N.C. at 65-66, 138 S.E.2d at 826-27 (determining that the trial court erred by reducing a jury verdict in the amount of payments from Southeastern Fire Insurance Company to plaintiff "under the Medical Payments coverage of [his] policy").  Thus, the extent to which a judgment amount should or should not be reduced by the making of a particular payment hinges upon whether that payment was made from a collateral source for purposes of the collateral source rule.

---

[6] The principle enunciated in *Holland* has been applied, for the most part, in cases involving joint tortfeasors or persons in essentially the same position such as the parties in *Holland*, 208 N.C. at 292-93, 180 S.E. at 594; *Baity*, 122 N.C. App. at 647, 470 S.E.2d at 838, and *Seafare Corp.*, 88 N.C. App. at 416, 363 S.E.2d at 652, and cases involving the receipt of both a tort recovery and worker's compensation benefits, such as *Schenk v. HNA Holdings, Inc.*, 170 N.C. App. 555, 562-63, 613 S.E.2d 503, 509, *disc. rev. denied*, 360 N.C. 177, 626 S.E.2d 649 (2005), and *Manning v. Fletcher*, 102 N.C. App. 392, 402 S.E.2d 648 (1991), *aff'd per curiam*, 331 N.C. 114, 413 S.E.2d 798 (1992).  Using similar logic, we believe that gratuitous payments made against the judgment would also have to be credited against the judgment amount.

Although the parties appear to agree that the defining characteristic of a collateral source is its independence from the tortfeasor, *see Fisher v. Thompson*, 50 N.C. App. 724, 731, 275 S.E.2d 507, 513 (1981) (stating that "[a] tort-feasor should not be permitted to reduce his own liability for damages by the amount of compensation the injured party receives from an independent source"), they focus upon differing sets of facts in attempting to determine whether a particular payment source is or is not sufficiently independent of the tortfeasor to justify treating that payment source as truly collateral. Plaintiff, on the one hand, contends that our analysis should focus upon the fact that, like other forms of insurance that have been deemed to be encompassed within the collateral source rule, plaintiff paid for the underinsured motorist coverage from which the payment at issue in this case was made and that this fact establishes the independence necessary to make such a payment subject to the collateral source rule. Defendant, on the other hand, focuses upon the fact that plaintiff would not have been entitled to receive payments on the basis of the underinsured motorist coverage that he purchased from Erie in the absence of the tortfeasor's negligence and argues that the payment at issue in this case was not independent of the tortfeasor for that reason. *See Williams*, 269 N.C. at 237, 152 S.E.2d at 105 (stating that, before being "entitled to the benefits of the endorsement," the insured "must show (1) he is legally entitled to recover damages, (2) from the owner or operator of an uninsured automobile, (3) because of bodily injury, (4) caused by accident, and (5) arising out of the ownership, maintenance, or

use of the uninsured automobile"). In other words, plaintiff focuses upon the fact that he purchased the uninsured motorist coverage that led to the making of Erie's payment to plaintiff, while defendant focuses upon the fact that plaintiff would not have been entitled to receive any payment from Erie had he not been injured as the result of defendant's negligence.

Admittedly, this Court has not previously addressed whether payments made from underinsured motorist carriers are or are not within the scope of the collateral source rule. For that reason, defendant can, with perfect propriety, argue that no North Carolina decision reaches the result contended for by plaintiff while plaintiff can, with equal propriety, assert that no North Carolina decision reaches the result advocated for by defendant. Put another way, none of the sources of payment that this Court has determined to be collateral appear to require proof of the defendant's negligence as a prerequisite for payment, while none of our decisions applying the collateral source rule hold that the fact that the payment in question stemmed from a source that a plaintiff had purchased, standing alone, renders that payment collateral in nature. As a result, the question before us is a close one that is not controlled by any of our earlier decisions. On balance, however, we are persuaded that treating payments made as the result of a plaintiff's decision to purchase optional underinsured motorist coverage as subject to the collateral source rule is more consistent with the policy justifications underlying the collateral source rule

and the relevant statutory provisions than is the result contended for by defendant in this case.

"[T]he primary purpose of [the Motor Vehicle Safety and Financial Responsibility Act] is to compensate innocent victims of financially irresponsible motorists . . . ." *Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 341 N.C. 678, 684, 462 S.E.2d 650, 653 (1995). As is the case with certain of the other sorts of payments that have been held to be subject to the collateral source rule, the payment that Erie made to plaintiff resulted from plaintiff's foresight in deciding to acquire underinsured motorist coverage. Such conduct is exactly the sort of action that the tort system should encourage. Even though plaintiff would not have been entitled to receive the payment in question in the absence of defendant's negligence, the fact remains that he would have been equally unable to receive it had he not voluntarily purchased optional underinsured motorist coverage. A decision that a plaintiff must credit the payment that he or she receives as a result of the decision to purchase such optional coverage against the judgment entered against the defendant whose negligence caused the plaintiff's injuries strikes us as likely to discourage North Carolina citizens from purchasing uninsured motorist coverage, a result that would have obvious deleterious consequences.

In seeking to persuade us to reach a different result, defendant argues that failing to require that the payment that plaintiff received from Erie be credited against the judgment amount could cause plaintiff to receive greater compensation

for his injuries than the jury awarded him contrary to our general principle against double or multiple recoveries enunciated in decisions such as *Baity*, 122 N.C. App. at 647, 470 S.E.2d at 837-38, and *Seafare Corp.*, 88 N.C. App. at 416, 363 S.E.2d at 652. Aside from the fact that "[t]he law contains no rigid rule against overcompensation," with several well-established legal "doctrines, such as the collateral benefits rule, [serving to] recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation," *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 219, 114 S. Ct. 1461, 1470-71, 128 L. Ed. 2d 148, 162-63 (1994) (footnote omitted), a narrow focus upon avoiding overcompensation in this case would create a countervailing inequity. Although a failure to credit the amount of the payment that Erie made to plaintiff against the judgment amount certainly creates a risk that plaintiff will receive more money as a result of his injuries than the total amount of the jury's verdict, a decision in defendant's favor with respect to the issue that is before us in this case would also mean that a defendant whose negligence caused a plaintiff's injuries would not be required to pay the full amount that he or she legally owed him for the injuries that the defendant caused the plaintiff to sustain. In other words, there is no escaping the fact that one party to this case or the other will receive what could be fairly characterized as a "windfall" as a result of our decision in this case. In light of that fact, we believe that the better option is to allow plaintiff to retain the "windfall" that results from his foresight in voluntarily electing to purchase underinsured motorist coverage rather than allowing defendant, who failed to

purchase enough liability coverage to adequately compensate plaintiff for his injuries, to be the ultimate beneficiary of plaintiff's decision to procure additional insurance coverage.

The approach that we believe to be appropriate in this case is also consistent with the manner in which the General Assembly elected to address the "double recovery" problem upon which defendant relies in seeking to obtain a decision in his favor in this case. According to N.C.G.S. § 20-279.21(b)(4):

> [I]f an underinsured motorist insurer, following the approval of the application, pays in settlement or partial or total satisfaction of judgment moneys to the claimant, the insurer shall be subrogated to or entitled to an assignment of the claimant's rights against the owner, operator, or maintainer of the underinsured highway vehicle.

In accordance with this statutory provision, an underinsured motorist carrier has the right to recoup payments made by the insurer to a plaintiff who has purchased underinsured motorist coverage from the defendant in the event that the defendant has sufficient resources to make such a payment. As a result, in the event that Erie had refrained from waiving its subrogation rights, it could have sought to recoup some or all of the monies that it paid to plaintiff from defendant using its statutory subrogation rights. In fact, the existence of this right of subrogation was one of the factors that North Carolina appellate courts have considered in determining that other payment sources were collateral for purposes of the collateral source rule. *See Cates*, 321 N.C. at 6, 361 S.E.2d at 738 (justifying its holding that Medicaid and other

public benefit payments were a collateral source based, in part, upon the fact that N.C.G.S. § 108A-57 "entitles the state to full reimbursement for any Medicaid payments made on a plaintiff's behalf in the event the plaintiff recovers an award for damages" and prevents "any 'windfall profit' for the plaintiff"); *see also Lunsford*, 367 N.C. at 628, 766 S.E.2d at 304 (stating that, "given the General Assembly's provision of subrogation and reimbursement rights for the financial protection of insurers, we cannot agree with Farm Bureau's argument that the trial court's order resulted in a 'windfall' for Lunsford" in that "Farm Bureau could have preserved its subrogation rights by advancing its UIM policy limits"); *Kaminsky v. Sebile*, 140 N.C. App. 71, 80, 535 S.E.2d 109, 115 (2000) (noting that, "[u]nder *Cates*, if a plaintiff recovers for the past Medicaid payments he or she received and the state fails to seek reimbursement, the plaintiff would not then be required to return the money to the defendant-tortfeasor" and that, "[s]imilarly, defendant here should not receive a windfall because the government abandoned its right under the [Federal Medical Care Recovery Act]"). Had Erie refrained from waiving its subrogation rights and attempted to assert those rights against defendant, the same protection against a windfall recovery would exist in this case. We see no reason why defendant should be entitled to different treatment simply because Erie elected to waive its statutory subrogation rights rather than attempting to enforce them. As a result, the approach advocated by defendant in this case is simply inconsistent with the approach to addressing the double recovery problem embodied in N.C.G.S. § 20-279.21(b)(4) given

that the underinsured motorist carrier, rather than the negligent tortfeasor, is benefitted by the statutory mechanism for addressing the double recovery problem.

Our decision that payments from underinsured motorist coverage are collateral for purposes of the collateral source rule is consistent with the decisions that have been made by almost every other state court that has been called upon to examine this issue. *See, e.g., Int'l Sales-Rentals Leasing Co. v. Nearhoof*, 263 So. 2d 569, 570 (Fla. 1972) ("agree[ing] with and adopt[ing] the view" of the lower state court that "uninsured motorist coverage is equivalent to a separate contract such as hospitalization insurance so that recovery thereunder may not be set-off from a judgment against a tortfeasor"); *State Farm Mut. Auto. Ins. Co. v. Kern*, 976 N.E.2d 716, 720 (Ind. Ct. App. 2012) (concluding that a judgment "entered against a third-party tortfeasor . . . is not satisfied when the plaintiff's insurer compensates the plaintiff due to the third-party tortfeasor's being underinsured" on the grounds that the tortfeasor "is not entitled to benefit from [the plaintiff's] carefulness and assiduousness in obtaining underinsured motorist insurance coverage"); *Schwartz v. Hasty*, 175 S.W.3d 621, 628-29 (Ky. Ct. App. 2005) (noting that "[t]he collateral source rule has two aspects: evidentiary and substantive," and "agree[ing] with the majority view that [underinsured motorist] payments fall within the collateral source rule"); *Estate of Rattenni v. Grainger*, 298 S.C. 276, 277-78, 379 S.E.2d 890, 890 (1989) (finding "no persuasive reason to distinguish underinsurance proceeds from other insurance proceeds that are subject to the collateral source rule" and agreeing with

the trial court's determination "that the collateral source rule applied because the benefits received were from the injured party's own underinsurance policy for which she paid the premiums"); *Johnson v. Gen. Motors Corp.*, 190 W. Va. 236, 244, 438 S.E.2d 28, 36 (1993) (stating that UIM is a collateral source on the grounds that "the party at fault should not be able to minimize his damages by offsetting payments received by the injured party through his own independent arrangements" (quoting *Ratlief v. Yokum*, 167 W. Va. 779, 787, 280 S.E.2d 584, 590 (1981))). For this reason, our decision that payments received as the result of the purchase of underinsured motorist coverage should not be credited against the amount of the judgment entered against defendant in this case, rather than being some sort of outlier, is fully consistent with the general thrust of American jurisprudence with respect to this issue.

Thus, for all of these reasons, we hold that the Court of Appeals erred by affirming the trial court's determination that the payment that plaintiff received from Erie should be credited against the judgment that should be entered against defendant in this case. As a result, the Court of Appeals' decision is reversed with respect to that issue. This case is remanded to the Court of Appeals for further remand to the Superior Court, Davidson County, for further proceedings not inconsistent with this opinion. The remaining issues addressed by the Court of Appeals are not before this Court and its decisions as to these matters remain undisturbed.

REVERSED AND REMANDED.