IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-62

No. COA20-60

Filed 16 March 2021

Haywood County, No. 16 CVS 266

CAROLINE-A-CONTRACTING, LLC, Plaintiff,

v.

J. SCOTT CAMPBELL CONSTRUCTION COMPANY, INC., Defendant.

Appeal by Plaintiff from judgment entered 14 June 2019 by Judge Bradley B. Letts in Haywood County Superior Court. Heard in the Court of Appeals 27 January 2021.

> *McAngus Goudelock & Courie, PLLC, by John E. Spainhour and Lucienne H. Peoples, for Plaintiff-Appellant.*

> *Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Allan R. Tarleton and Martin E. Moore, for Defendant-Appellee.*

INMAN, Judge.

Caroline-A-Contracting, LLC ("CAC"), a subcontractor found liable in tort for damages it caused on a construction project, appeals from the trial court's judgment applying the collateral source rule to deny a credit for payments made to the general contractor, J. Scott Campbell Construction Company ("Campbell"), by another subcontractor. After careful review, we affirm.

## I.   FACTUAL & PROCEDURAL HISTORY

CAROLINE-A-CONTRACTING, LLC v. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

¶ 2        In early 2015, Campbell contracted to build a house in Maggie Valley, North Carolina.  As part of the project, Campbell hired Ariel Mendoza ("Mr. Mendoza") of Mendoza Masonry and Landscaping to construct a boulder retaining wall to support a vehicle turnaround area.  The wall collapsed twice during construction because its water drainage system failed and its foundation was compromised after significant rains.  To remove his own damaged work, stabilize the slope, and erect the wall anew, Mr. Mendoza contracted with CAC.  Mr. Mendoza and CAC were the only parties to the written contract, but the contract committed CAC to the "[c]ompletion of the work and satisfaction of [Campbell] and [home-owner]."

¶ 3        While CAC was reconstructing the boulder wall, Campbell determined that the new construction was a failure[1] and ordered CAC to immediately stop work and remove its equipment and employees from the site.  Campbell then hired a replacement contractor, Tim Burress ("Mr. Burress"), to raze the existing construction and rebuild the wall, at a cost of $106,000.  Campbell and Mr. Mendoza each refused to pay CAC.

---

[1]At trial, Campbell testified that CAC had not correctly compacted the site to prevent saturation and to stabilize the area for construction of the wall: "You could take a piece of rebar with your hand and sink it out of sight.  It looked like a pond.  There was so much water standing there. . . .  It was just unacceptable work. . . .  Everything about that job was questionable."

CAROLINE-A-CONTRACTING, LLC v. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

¶ 4    On 15 March 2015, CAC filed separate lawsuits against Campbell and Mr. Mendoza.

¶ 5    CAC's lawsuit against Mr. Mendoza for breach of contract alleged CAC had incurred $20,000 in damages. Mr. Mendoza filed an answer and counterclaim alleging that CAC's work was defective, was not supervised by an engineer as required by the contract, and caused damages to Mr. Mendoza exceeding $50,000.

¶ 6    CAC's separate lawsuit against Campbell sought to recover damages for breach of contract in the amount of $30,000 and, in the alternative, damages of $35,000 in *quantum meruit.* Campbell denied the existence of a contract with CAC as well as the basis for the *quantum meruit* claim. Campbell also asserted a counterclaim of negligence for damages as a result of CAC's work. In response to the counterclaim, CAC raised a defense requesting a credit or offset against any amounts paid by another source to Campbell for the damages Campbell claimed against CAC.

¶ 7    While both actions were pending, CAC learned that Mr. Mendoza had paid money to Campbell related to damages caused by the defective retaining wall.

¶ 8    In the lawsuit against Campbell, CAC moved for summary judgment, arguing that Campbell was not entitled to recover from CAC money damages that had already been paid by Mr. Mendoza. In response, Campbell argued that the collateral source rule should exclude evidence of such payments because Mr. Mendoza was an

CAROLINE-A-CONTRACTING, LLC V. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

independent party. The trial court denied CAC's motion for summary judgment in September 2018.

¶ 9 Three months later, in December 2018, CAC and Mr. Mendoza dismissed with prejudice their claims against each other. The terms of the dismissal are not reflected in the record on appeal.

¶ 10 Following the dismissal of its action against Mr. Mendoza and two months before trial of the action from which the appeal arises, CAC filed a motion for a credit of at least $90,000 in the event of an adverse verdict on Campbell's counterclaim, based on payments Campbell had received from Mr. Mendoza. Campbell filed a motion to exclude evidence of these payments. The trial court granted Campbell's motion based on the collateral source rule and because such evidence "might confuse the jury or diminish any award based on the evidence." The trial court allowed CAC to proffer evidence pre-trial on its motion for credit and decided that if a verdict was returned adverse to CAC, "the court will hear arguments that the award should be reduced or credited by payments from [Mr.] Mendoza."[2]

¶ 11 The case came on for trial in May 2019. The jury determined that CAC did not have a contract with Campbell, but it awarded $5,000 to CAC in *quantum meruit* for

---

[2]By the time of trial, Mr. Mendoza had paid a total of $147,500 to repair damage related to the wall—$105,000 to Campbell and $42,500 to the replacement contractor, Mr. Burress.

CAROLINE-A-CONTRACTING, LLC V. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

its supplies and efforts to remediate the site. The jury also found that Campbell had been damaged by CAC's negligence in construction and awarded Campbell $41,678.09 plus interest in damages.

¶ 12      After trial, CAC renewed its motion for credit based on Mr. Mendoza's prior payments to Campbell. The trial court denied CAC's motion in an order that restated the jury verdict and found, in relevant part:

> 28. . . . [Mr. Mendoza] paid [Campbell] $105,000 for costs attributable to the repair of the wall.
>
> . . . .
>
> 32. [T]he payments made by [Mr. Mendoza] to [Campbell] were not the result of any type of insurance coverage that [Campbell] had purchased.
>
> . . . .
>
> 38. The gravamen of this case turns on the status of [Mr.] Mendoza. The evidence is uncontroverted that [Mr.] Mendoza is independent of the Plaintiff, Caroline-A-Contracting, LLC. [Mr.] Mendoza is not an employee or agent of [CAC]. [Mr.] Mendoza was not a party to this lawsuit.
>
> 39. . . . [T]he work performed by [CAC] independent of [Mr. Mendoza] was determined to be negligent and damages were awarded to Campbell Construction.
>
> . . . .
>
> 42. Under the unique facts of this case . . . the payments made by [Mr.] Mendoza constitute payments made from an independent, collateral source.

CAROLINE-A-CONTRACTING, LLC V. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

The trial court denied CAC's motion for a credit, concluding:

> 2. [Mr.] Mendoza is a source independent of [CAC].
>
> 3. The collateral source rule applies in this case and as such its application bars the tortfeasor [CAC] from reducing its own liability for damages by any amount of compensation the injured party [Campbell] received from an independent source.
>
> 4. Based upon the collateral source rule [CAC] is not entitled to a credit for payments made by [Mr.] Mendoza to [Campbell].

CAC filed written notice of appeal on 10 July 2019.

## II.   ANALYSIS

On appeal, we are bound by the facts found by the trial court if they are supported by the evidence, *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980), and we review a trial court's conclusions of law *de novo*, *Hairston v. Harward*, 371 N.C. 647, 656, 821 S.E.2d 384, 391 (2018).

The sole issue on appeal is whether the trial court erred by treating the payments from Mr. Mendoza as a collateral source, and consequently denying a credit to CAC. Whether the collateral source rule applies to payments made by a source independent of the negligent actor to an injured party in the context of a construction dispute appears to be an issue of first impression in North Carolina.[3]

---

[3]We note that just last year, in *Crescent University City Venture, LLC v. Trussway Manufacturing, Inc.*, our Supreme Court unanimously held that a commercial property owner

CAROLINE-A-CONTRACTING, LLC v. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

### A. Collateral Source Rule Precedent

¶ 15      The collateral source rule provides that a "tort-feasor should not be permitted to reduce his own liability for damages by the amount of compensation the injured party receives from an independent source." *Katy v. Capriola*, 226 N.C. App. 470, 482, 742 S.E.2d 247, 256 (2013) (citations and quotation marks omitted). The collateral source rule "is punitive in nature, and is intended to prevent the tortfeasor from a windfall when a portion of plaintiff's damages have been paid by a collateral source." *Wilson v. Burch Farms, Inc.*, 176 N.C. App. 629, 639, 627 S.E.2d 249, 257 (2006).

¶ 16      Our Supreme Court "has not clearly enunciated the factors that should be taken into account in determining whether a payment source is or is not collateral to a defendant," but the "defining characteristic of a collateral source is its *independence from the tortfeasor.*" *Hairston*, 371 N.C. at 658-60, 821 S.E.2d at 392-93 (citing *Fisher v. Thompson*, 50 N.C. App. 724, 731, 275 S.E.2d 507, 513 (1981)) (emphasis added). The most explicit definition of "collateral source" was provided only by way of examples listed a half century ago: "[A] plaintiff's recovery will not be reduced by the

---

could not recover for economic loss by asserting a tort claim against a subcontracted manufacturer of building materials with whom the property owner had no contract. __ N.C. __, __, 852 S.E.2d 98, 99 (Dec. 18, 2020). In this appeal, CAC challenges only the amount of damages awarded to Campbell on a counterclaim for negligence. CAC does not challenge the validity of Campbell's tort claim. So the economic loss rule applied in *Crescent* is not before us.

CAROLINE-A-CONTRACTING, LLC V. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

fact that . . . expenses were paid by some source collateral to the defendant, such as by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer, or by an insurance company." *Young v. Balt. & Ohio R.R.,* 266 N.C. 458, 466, 146 S.E.2d 441, 446 (1966) (citation and quotation marks omitted); *see also Cates v. Wilson*, 321 N.C. 1, 5, 361 S.E.2d 734, 737 (1987); *Hairston*, 371 N.C. at 657, 821 S.E.2d at 391.

¶ 17        The collateral source rule is an exception to the general common-law principle that there should be only one recovery for one injury. *See Holland v. S. Pub. Utils. Co.*, 208 N.C. 289, 292, 180 S.E.2d 592, 593 (1935) ("All of the authorities are to the effect that, where there are joint tort-feasors, there can be but one recovery for the same injury or damage, and that settlement with one of the tort-feasors releases the others. . . ."). This Court has extended *Holland*'s "one satisfaction" principle to breach of contract cases. *RPR & Assocs., Inc. v. Univ. of N.C.-Chapel Hill*, 153 N.C. App. 342, 357, 570 S.E.2d 510, 519 (2002) ("In a breach of contract action, a defendant is entitled to produce evidence of payment of compensation by a third party to a plaintiff for damages resulting from a similar claim regarding the same subject matter.").

¶ 18        CAC relies on *Holland*'s holding to suggest that "any amount paid by anybody . . . should be held for a credit on the total recovery in any action for the same injury or damage." *Holland*, 208 N.C. at 292, 180 S.E.2d at 593. But, in *Hairston v. Harward*, our Supreme Court emphasized that "the continued viability of the

CAROLINE-A-CONTRACTING, LLC V. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

collateral source rule clearly indicates that . . . *Holland* cannot be properly understood as meaning that 'any amount paid by anybody' that benefits plaintiff or covers costs that plaintiff incurred as the result of a compensable injury must be credited against the judgment amount." *Hairston*, 371 N.C. at 659, 821 S.E.2d at 392. Though "gratuitous payments made against the judgment would also have to be credited against the judgment amount," *id.* at 659 n.6, 821 S.E.2d at 392 n.6, such payments, as in this case, are nonetheless subject to the same independent, third-party inquiry.

¶ 19    Other state appellate courts have applied the collateral source rule to claims for negligent construction resulting in injury to real property. *See, e.g., New Found. Baptist Church v. Davis*, 186 S.E.2d 247, 248-49 (S.C. 1972) (denying a defendant found liable for negligent construction a credit for repairs completed by the church trustee); *Hurd v. Nelson*, 714 P.2d 767, 768, 770-71 (Wyo. 1986) (holding that volunteer labor from church congregants to remodel a home and construct a shop and storage building constituted a collateral source, so the defendant could not receive a credit against a judgment for breach of his divorce settlement); *Shaffer v. Debbas*, 21 Cal. Rptr. 2d 110, 113 (Cal. App. 4th 1993) (holding homeowner's settlement with the property insurer was a collateral source and did not offset damages owed by defendant builders in defective construction case). As in North Carolina, the collateral source rule in these states is governed entirely by common law, because

CAROLINE-A-CONTRACTING, LLC v. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

these states' legislatures have not defined the collateral source rule by statute.[4] Other states have done so. *See, e.g.,* Fla. Stat. § 768.76(2)(a) (2020) (limiting collateral sources to four categories: federal social security benefits; "health, sickness, or income disability insurance" and automobile accident insurance; any contract or agreement to reimburse for health care services; and an employer continuation plan that pays wages during a period of disability).

*B. Applying the Collateral Source Rule*

¶ 20    Here, to decide whether the collateral source rule applies, we must consider Mr. Mendoza's role in the residential construction project and his relationship to tortfeasor CAC. After his own attempt to build the retaining wall failed, Mr. Mendoza hired CAC to re-erect it; Campbell was not a party to the contract between Mr. Mendoza and CAC. Other than contracting with CAC, Mr. Mendoza had no further involvement with the reconstruction of the wall. Mr. Mendoza was not CAC's agent or employee.

¶ 21    Campbell's counterclaim against CAC sought recovery on a theory of negligence, not breach of contract. Campbell admitted that it ordered CAC from the property "as a result of its negligent and dangerous work causing damage to the

---

[4]And, like North Carolina, all three jurisdictions—South Carolina, Wyoming, and California (along with several other states)—apply the collateral source rule to gratuitous payments or services in the same manner as they do insurance payments.

CAROLINE-A-CONTRACTING, LLC v. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

surrounding work and real property." Campbell alleged that Mr. Mendoza entered into a contract with CAC without Campbell's knowledge, and that by engaging in the work, CAC "owed a duty to [Campbell] to perform its [w]ork in such a manner as not to interfere with, damage, or hinder . . . the [p]roject" and "not to damage real or personal property at the [p]roject." Campbell's counterclaim was for damage CAC caused to *both* the project *and* the real property.

¶ 22     Mr. Mendoza's payments to Campbell for his failure to fulfill his obligations were entirely independent of CAC's negligence and do not relieve CAC from its own distinct liability to Campbell for damage caused at the site. *See Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991) ("Generally, one who employs an independent contractor is not liable for the independent contractor's negligence unless the employer retains the right to control the manner in which the contractor performs his work.") (citation omitted); *see also Copeland v. Amward Homes of N.C., Inc.*, 269 N.C. App. 143, 147, 837 S.E.2d 903, 906 (2020), *cert. granted*, 851 S.E.2d 360 (N.C. 2020) (mem.) ("The legal responsibility for the safe performance of that work rests entirely on the independent contractor.") (citation omitted). Because CAC was an independent subcontractor, Mr. Mendoza had no obligation beyond his own contractual duties to Campbell to rectify damages caused by CAC's negligence. Mr. Mendoza's payments to Campbell, thus, constitute payments made from a collateral source.

CAROLINE-A-CONTRACTING, LLC V. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

¶ 23        CAC compares this case to another construction contract case in which the collateral source rule did not apply.  In *RPR & Associates, Inc.*, a construction contractor claimed it had incurred expenses as a result of a delay by "the State of North Carolina *through* its *agent* architect" for a project on a college campus.  153 N.C. App. at 357, 570 S.E.2d at 519 (emphasis added).  The plaintiff had already sued the architect for breach of contract because of the same delay in construction and obtained payment of $200,000 in settlement.  *Id.*, 570 S.E.2d at 520.  When the plaintiff then sued the State, our Court decided that "defendant was entitled to a reduction of damages for monies plaintiff received for identical injuries resulting from an identical delay."  *Id.* (citing *Ryals v. Hall-Lane Moving & Storage Co.*, 122 N.C. App. 134, 141-42, 468 S.E.2d 69, 74-75 (1996)).

¶ 24        Here, by contrast, Campbell did not sue Mr. Mendoza or allege that Mr. Mendoza was an agent of CAC.  CAC pursued a separate action against Mr. Mendoza arising from the wall reconstruction project.  CAC and Mr. Mendoza then dismissed their claims against each other with prejudice.

¶ 25        In addition, unlike the work of the architect in *RPR & Associates, Inc.*, CAC's work on the retaining wall in this case was entirely separate from Mr. Mendoza's work, causing injury and delay distinct from Mr. Mendoza's own deficient work and failure to perform under its agreement with Campbell.  As established above, Mr.

CAROLINE-A-CONTRACTING, LLC V. J. SCOTT CAMPBELL CONSTR. CO.

2021-NCCOA-62

*Opinion of the Court*

Mendoza was not CAC's agent. CAC therefore is not entitled to a credit for Mr. Mendoza's payments to Campbell.

CAC bemoans that Campbell will recover doubly for the same injury. To the extent Mr. Mendoza's payments and the damages awarded overlap, our prior decisions have established that in this situation, the injured party—Campbell, not the tortfeasor—CAC, should reap any such windfall. *See Wilson*, 176 N.C. App. at 639, 627 S.E.2d at 257. Thus, we conclude the collateral source rule applies in this case and bars CAC from reducing its liability by the amount of compensation Campbell received from Mr. Mendoza.

## III. CONCLUSION

For the foregoing reasons, we hold that the collateral source rule applies to Mr. Mendoza's payments to Campbell in this case, barring CAC from reducing its own liability by any amount of compensation Campbell received from an independent source. Therefore, we find no error and affirm the judgment of the trial court.

AFFIRMED.

Judges COLLINS and GRIFFIN concur.