COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Huff and Lorish
Argued by videoconference

MICHAEL BROWN

v.      Record No. 1100-22-1

TIMOTHY L. KIRKPATRICK

OPINION BY
JUDGE ROBERT J. HUMPHREYS
JULY 5, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Steven L. Lauer (S. Geoffrey Glick; The Joel Bieber Firm, on briefs),
for appellant.

John D. McGavin (Kara A. Schmidt; McGavin, Boyce, Bardot,
Thorsen & Katz, PC, on brief), for appellee.

Michael Brown appeals from a ruling of the Newport News Circuit Court granting

appellee Timothy Kirkpatrick's motion to mark judgment satisfied following Brown's insurance

carrier USAA tendering its underinsured motorist (UIM) coverage obligations to Brown.  Brown

contends that Kirkpatrick should not have been entitled to any credit or offset for payments made

by USAA to Brown.

BACKGROUND

On April 20, 2022, a Newport News jury awarded Michael Brown a judgment of

$286,000 against Timothy L. Kirkpatrick for damages arising out of a motor vehicle accident.[1]

Prior to trial, USAA, Brown's insurance company (involved in the case as an underinsured

motorist carrier), informed Kirkpatrick that "USAA is willing to waive subrogation against

[Kirkpatrick] if State Farm [Kirkpatrick's insurer] continues the defense . . . through the trial of

---

[1] The underlying facts of the tort suit are not relevant for this appeal.

this matter."[2]  USAA's right to subrogation was derived from Code § 38.2-2206(G) which provides that "[a]ny insurer paying [an underinsured motorist claim] shall be subrogated to the rights of the insured to whom the claim was paid against the person causing the . . . damage and that person's insurer."

Following the verdict, State Farm paid out its per person policy limit of $50,000, plus costs, on behalf of Kirkpatrick.  After the State Farm payment, USAA sent Brown a check for $236,000 pursuant to Brown's underinsured motorist coverage.  In the letter accompanying that check, USAA requested that Brown ask that the circuit court "mark this matter as 'paid and satisfied.'"  Brown responded that he believed that he was entitled to pursue recovery against Kirkpatrick in light of USAA's waiver of its right to subrogation.

Following Brown's refusal, Kirkpatrick filed a motion under Code § 8.01-455 requesting that the circuit court enter an order marking the judgment as satisfied.[3]  At the hearing on the motion Kirkpatrick argued that "USAA indicated that they would satisfy their share post-verdict and waive subrogation against Mr. Kirkpatrick if he appeared for trial."  However, Kirkpatrick argued that the waiver of USAA's right to pursue Kirkpatrick did not mean that Brown regained the right to pursue Kirkpatrick.  Furthermore, Kirkpatrick asserted that USAA joined in its motion to have the judgment marked paid and satisfied.  USAA's attorney was present at the hearing and confirmed that USAA had not "formally joined in the motion, but [Kirkpatrick's assertion] was correct" and that "there was a waiver of subrogation in exchange with [sic] the understanding that [State Farm] weren't [sic] going to tender and do the defense of the case."  Brown argued that the UIM payment was a collateral source and that Kirkpatrick's obligation to

<hr>

[2] Kirkpatrick notes that this promise to waive subrogation was intended to entice Kirkpatrick to attend the trial and "undertake [his] best effort" in his defense.

[3] Code § 8.01-455 allows a "defendant in any judgment" to move the court to mark the judgment satisfied "upon proof that the judgment has been paid off or discharged."

pay the judgment was not extinguished simply because USAA waived its right to pursue him in Brown's place.

The circuit court agreed with Kirkpatrick "for the reasons enunciated again by counsel for the defense." Brown now appeals.

ANALYSIS

The question raised by this case is whether an insurer's waiver of its right to subrogation against a tortfeasor precludes the insured-plaintiff from recovering on a judgment against the tortfeasor. This is a question of law that we review de novo. For the reasons that follow, we hold that the mere waiver of the insurer's right to subrogation does not discharge the underlying tort liability.

"Subrogation is merely the 'substitution of one person in the place of another with reference to a lawful claim, demand or right so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.'" *Llewellyn v. White*, 297 Va. 588, 599 (2019) (quoting *Subrogation*, *Black's Law Dictionary* (4th ed. 1957)). In the insurance context, an insurer who has paid a loss becomes a subrogee to the rights of their insured against the responsible party with respect to any loss covered by the policy. *Id.* The insurer's right of subrogation is wholly derivative of the subrogor's rights; in other words, "a subrogated insurer stands in shoes of an insured, and has no greater rights than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have." Couch on Insurance § 222:5 (3d ed. 2022) (footnotes omitted).

Virginia has codified a requirement that all contracts for automobile insurance must include an under- or uninsured motorist coverage provision. Code § 38.2-2206(A). The UIM coverage requires the insurance company to pay its insured for damages caused by a driver

whose own insurance coverage is insufficient to cover the insured's damages. Code

§ 38.2-2206(B). The statute provides that,

> Any insurer paying a claim under the endorsement or provisions required by subsection A [UIM coverage] *shall be subrogated* to the rights of the insured to whom the claim was paid against the person causing the injury, death, or damage and that person's insurer, although it may deny coverage for any reason, to the extent that payment was made.

Code § 38.2-2206(G) (emphasis added).

In *Llewellyn v. White*, the Virginia Supreme Court held that an insurance company's

agreement with the *plaintiff* to waive its right of subrogation did not relieve the tortfeasor's

judgment debt. The plaintiff settled her UIM claim with her insurer pre-trial for $750,000. 297

Va. at 593. As part of that settlement the UIM insurer agreed with the plaintiff that it would

waive its rights to be subrogated to the rights the plaintiff had against the defendant. *Id.* at 594.

The case proceeded to trial, and the plaintiff was awarded $1.5 million in damages. *Id.* The

defendant filed a motion to have her judgment reduced by the $750,000 paid by plaintiff's UIM

carrier pursuant to Code § 8.01-35.1.[4] *Id.* The Supreme Court held that the UIM insurer was not

a joint tortfeasor and that the payment to the plaintiff was a collateral source; therefore, the

defendant remained liable for the full amount of the judgment. *Id.* at 602.

The collateral source rule, as applied in *Llewellyn*, establishes that "a person who is

negligent and injures another owes to the latter full compensation for the injury inflicted[,] . . .

and payment for such injury from a collateral source in no way relieves the wrongdoer of [the]

obligation." *Id.* at 601 (alterations in original) (quoting *Acuar v. Letourneau*, 260 Va. 180, 189

(2000)). Specific to the insurance context, the collateral source rule is that "damages,

recoverable of personal injuries inflicted through the negligence of another are not to be reduced

---

[4] Code § 8.01-35.1 provides that a release of one joint tortfeasor allows for a set-off for the other joint tortfeasor(s) by the amount settled by the released tortfeasor.

by reason of the fact that the injured party had been partly compensated for his loss by insurance which he has procured and for which he has paid." *Id.* The collateral source rule and the principle that an injured party should not be entitled to a double recovery are fundamentally at odds. *Id.* at 600. The Virginia Supreme Court determined that in resolving this tension "the better option is to allow plaintiff to retain the 'windfall' that results from his foresight in voluntarily electing to purchase [UIM] coverage rather than allowing defendant . . . to be the ultimate beneficiary of plaintiff's decision to procure additional insurance coverage." *Id.* at 602 (quoting *Hairston v. Howard*, 821 S.E.2d 384, 393 (N.C. 2018)).

On appeal, Brown argues that the logic of *Llewellyn* applies with equal force to a situation where the insurance company has agreed with the *defendant* to waive its subrogation rights. We agree.

First, we note that Code § 8.01-455 only entitles Kirkpatrick to have the judgment marked as satisfied upon proof that the judgment has been "paid off or discharged." It is undisputed that the judgment has not been "paid off." Following State Farm's payment of $50,000, Kirkpatrick has not paid any amount of the judgment. Additionally, *Llewellyn* is clear that payments to a plaintiff by a UIM carrier are collateral to the defendant and implicate the collateral source rule such that USAA's payments to Brown cannot lead to the judgment being "paid off."

Kirkpatrick contends that *Llewellyn* is inapposite on this point because, in this case, the insurer waived its subrogation rights with the defendant, whereas in *Llewellyn*, the insurer waived its subrogation rights as part of its settlement agreement with the plaintiff. Kirkpatrick contends that while USAA has waived its subrogation rights as to Kirkpatrick, it retains some enforceable subrogation rights against Brown. This argument misconceives the nature of the subrogation right.

Our Supreme Court has distinguished subrogation from reimbursement. In *Reynolds Metals Co. v. Smith*, 218 Va. 881, 884 (1978), the Court ruled that a group accident and health insurance "non-duplication of benefits" provision did not violate the anti-subrogation statute then found in Code § 38.1-342.2 (codified as amended at Code § 38.2-3405). The statute prohibited subrogation provisions in medical expenses paid from health insurance plans. *Id.* The policy required payees under the plan to reimburse the insurer for any amount received from a third party in compensation for their injuries. *Id.* The Court reasoned that subrogation, by definition, requires that the subrogee obtain the right to proceed against a third party and that the non-duplication provision provided no such right. *Id.* at 883. Accordingly, the reimbursement provision was not prohibited by statute. *Id.* at 884.

For purposes of this case, *Reynolds Metals Co.* contradicts Kirkpatrick's argument that USAA retains some subrogation right against Brown. *Reynolds Metals Co.* directly states that an insurer's right to reimbursement from its insured is *not* equivalent to their right of subrogation against the defendant. *Id.* Brown's insurance policy *may* require him to reimburse USAA for any recovery that he obtains from Kirkpatrick, but that fact does not mean that Kirkpatrick is allowed to escape his tort liability. Kirkpatrick has failed to articulate what USAA's subrogation right *against* Brown would allow it to do. USAA has waived its right to pursue Kirkpatrick for the money it paid to Brown. That does not mean that Kirkpatrick's obligation has been paid off. *See Llewellyn*, 297 Va. at 599 ("Payment by the plaintiff's UIM carrier to its insured does not entitle an underinsured tortfeasor to an offset or credit on the judgment against her. It merely

*allows* the UIM carrier to substitute itself for its insured in seeking to enforce any judgment against her." (emphasis added)).[5]

Additionally, the record before this Court does not support a finding that the judgment was discharged. Assuming, without deciding, that a subrogee has the authority to settle its subrogation claim to the detriment of the subrogor, the record does not establish that USAA truly "settled" its subrogation claim against Kirkpatrick.[6] The record shows that USAA agreed with Kirkpatrick that it was "willing to waive subrogation against [Kirkpatrick] if State Farm continues the defense on behalf of Defendant, Timothy Kirkpatrick, through the trial of this matter." The waiver of the right to pursue recovery that is derivative of the insured's right is conceptually distinct from a settlement, release, or discharge of the underlying debt. The subrogation right is the right to pursue a third party for a loss caused by that third party. "Discharge" is "[a]ny method by which a legal duty is extinguished; esp., the payment of a debt or satisfaction of some other obligation." *Discharge*, *Black's Law Dictionary* (11th ed. 2019). The waiver of the right to pursue a recovery of another's claim, standing alone, does not extinguish the underlying claim.

---

[5] Kirkpatrick also argues that USAA's waiver of its subrogation rights does not mean that Brown automatically regained the right to pursue Kirkpatrick. This argument is refuted by the derivative nature of the subrogation right as well as by *Llewellyn*, 297 Va. at 600 ("Erie agreed with [plaintiff] not to interfere with *[her] right* to collect from [defendant] any amounts [defendant] was found to owe [plaintiff]." (emphasis added)).

[6] Virginia courts have not decided whether a subrogee has the authority to settle a subrogation claim to the detriment of the subrogor and at least two of our sister state courts have reached different conclusions on the question. *Compare Ferrelgas, Inc. v. Yeiser*, 247 P.3d 1022, 1027-28 (Colo. 2011) (holding that an insurance company's settlement of a nearly $200,000 subrogation claim for $175,000 with the tortfeasor reduced the insured subrogor's tort judgment by the full $200,000), *with Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 301 P.3d 387 (N.M. 2013) (holding that a defendant may not obtain a subrogation lien against the recovery a plaintiff would obtain from that same defendant). Because we hold that USAA simply waived its right to subrogation as opposed to settling its subrogation claim, we need not reach whether a subrogee may settle its subrogation claim pretrial to the detriment of the subrogor.

Based on the record before us, USAA's subrogation right was the only mechanism that permitted it to interfere with Brown's right to recover his judgment against Kirkpatrick. By waiving its right to subrogation, USAA effectively disclaimed any interest in the judgment itself.[7]

Kirkpatrick points to nonbinding dicta in *Llewellyn* to contend that he is entitled to be released from his liability. The *Llewellyn* Court wrote that:

> By statute, the right of subrogation belongs to the UIM carrier. Code § 38.2-2206(G). It can exercise or waive that right as it pleases. If it desires to do so, the UIM carrier can make an agreement with a defendant not to pursue the recovery that the carrier's subrogation rights entitle it to seek from the defendant. In such an instance, if there is an agreement between the UIM carrier and the defendant, the defendant may be entitled to credit against any judgment received by the plaintiff, up to the amount owed to the UIM insurer pursuant to its subrogation rights. However, no such agreement was struck in this case. In this instance, [the UIM carrier] sought no consideration from and made no agreement with Llewellyn, [the defendant,] to forgive any of the amount that [the UIM carrier] had the statutory right to seek from Llewellyn. Instead, [the UIM carrier] agreed with White, [the plaintiff,] not to interfere with White's right to collect from Llewellyn any amounts Llewellyn was found to owe White. Llewellyn is not entitled to any credit for money she owes pursuant to a judgment against her that she has not paid.

*Llewellyn*, 297 Va. at 600. Kirkpatrick argues that the dicta should apply to this case and that because USAA agreed "not to pursue the recovery that the carrier's subrogation rights entitle[d] it to seek," he is "entitled to credit against any judgment received by the plaintiff, up to the amount owed to the UIM insurer pursuant to its subrogation rights." *Id.*

We find the dicta unpersuasive. "Dicta cannot 'serve as a source of binding authority in American jurisprudence.'" *Newman v. Newman*, 42 Va. App. 557, 566 (2004) (en banc)

---

[7] As noted, USAA *may* have a right to reimbursement from Brown pursuant to its policy; however, the policy is not in the record and this case does not require us to determine whether USAA's contract with Brown would entitle it to any proceeds that Brown ultimately recovers from Kirkpatrick.

(quoting *United States v. Pasquantino*, 336 F.3d 321, 329 (4th Cir. 2003) (en banc)). "Dicta in a prior decision generally refers to that portion of an opinion 'not essential' to the disposition in the case." *Id.* (quoting *Cent. Green Co. v. United States*, 531 U.S. 425, 431 (2001)). The hypothetical counterfactual raised by the *Llewellyn* Court of a UIM carrier agreeing with a defendant to forgo recovery was not essential to its holding that payments by a UIM carrier were a collateral source and not subject to set-off under Code § 8.01-35.1; accordingly, it does not bind us.

The *Llewellyn* Court provided no rationale for why the mere agreement to forgo the subrogee's recovery would entitle the tortfeasor to credits against the underlying judgment. Indeed, the result suggested by the dicta runs contrary to the rationale of the actual holding of *Llewellyn*. When a plaintiff has been compensated by a third party for damages caused by a tortfeasor, a windfall is inevitable. Either the plaintiff secures a double recovery, or the tortfeasor escapes responsibility for damages caused. The collateral source rule requires that the defendant does not receive that windfall. When subrogation rights exist, however, neither the plaintiff nor the defendant receive a windfall. Where the subrogee waives those rights to recover, then the public policy balancing of the collateral source rule comes back into play. Indeed, that was the basis of the *Llewellyn* decision: the Court acknowledged that the waiver of subrogation could lead to a double recovery but noted that the "'law contains no rigid rule against overcompensation,' and 'making tortfeasors pay for the damage they cause can be more important than preventing overcompensation.'" *Llewellyn*, 297 Va. at 601 (quoting *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 219 (1994)).

Additionally, the North Carolina case on which the *Llewellyn* Court chiefly relied, involved a situation where the subrogee "waived its subrogation rights against defendant." *Hairston*, 821 S.E.2d at 387. The *Hairston* court saw "no reason why defendant should be

entitled to different treatment simply because [the insurer] elected to waive its statutory subrogation rights rather than attempting to enforce them." *Id.* at 395. USAA bargained away its right to pursue recovery from Kirkpatrick in exchange for his appearance and participation at trial. Kirkpatrick received the benefit of that bargain because USAA no longer has the right to recover against him. That agreement has no impact on Brown's right to recover against Kirkpatrick. We see no reason why Kirkpatrick should be able to escape his tort liability because USAA declined to pursue its subrogation rights.

Finally, Kirkpatrick argues that it "would be against public policy to allow [Brown] a double recovery at the expense of USAA." This misunderstands the consequences of applying the collateral source rule. USAA *could* have recovered from Kirkpatrick and prevented a double recovery, but it chose not to. Allowing Brown to recover against Kirkpatrick does not come at USAA's expense, but Kirkpatrick's. This result is perfectly in line with the result dictated by the collateral source rule and the rationale, if not the dicta, of *Llewellyn*.

## CONCLUSION

Because Kirkpatrick's judgment debt has neither been paid off nor discharged, he was not entitled to relief under Code § 8.01-455, and the circuit court erred by granting his motion to mark the judgment as paid and satisfied. Accordingly, we reverse the ruling of the circuit court and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

Huff, J., dissenting.

Code § 38.2-2206 governs uninsured/underinsured motorist insurance ("UIM") coverage, such as the policy appellant had with USAA. Subsection G of that statute states, in relevant part, that "[a]ny insurer . . . shall be subrogated to the rights of the insured to whom the claim was paid against the person causing the injury[] . . . and that person's insurer." Code § 38.2-2206(G). In the insurance context, the principle of subrogation dictates that "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Subrogation*, *Black's Law Dictionary* (11th ed. 2019). Thus, by statute, when an uninsured or underinsured driver causes an accident with an UIM-insured driver, and the insured driver obtains a judgment against the underinsured driver, the UIM insurer enjoys the statutory right to enforce that judgment against the underinsured driver to recoup its costs from paying pursuant to the UIM policy.

The parties all agree USAA waived its subrogation right against appellee. Yet they differ on the effect of that waiver. Appellant argues USAA's waiver means all rights to pursue the recovery essentially revert to him, so he can claim the remainder of the judgment from appellee, despite the UIM-policy payment. The majority agrees.

Appellee counters that the right belongs exclusively to the UIM carrier. Thus, when waived by the carrier, that right is extinguished and any payment from a UIM policy is credited toward satisfaction of the judgment; the insured plaintiff may seek to enforce his judgment against the tortfeasor only to the extent of any remainder. Because I agree with appellee, I respectfully dissent.

The Virginia Supreme Court in *Llewellyn v. White*, 297 Va. 588, 600 (2019), described the nature of a UIM insurer's statutory subrogation right under Code § 38.2-2206(G). That right, the Court wrote, "belongs to the UIM carrier. It can exercise or waive that right as it pleases."

- 11 -

*Id.* Accordingly, "the UIM carrier can make an agreement with the [underinsured] defendant not to pursue the recovery that the carrier's subrogation rights entitle it to seek from the defendant." *Id.* Under such an agreement, "the defendant may be entitled to credit against any judgment received by the plaintiff, up to the amount owed to the UIM insurer pursuant to its subrogation rights." *Id.*[8]

That is what happened here. Consistent with *Llewellyn*, USAA—through its waiver— agreed with appellee that it would not enforce the judgment against him to recoup the cost of the UIM-policy payment. Accordingly, appellee was "entitled to credit against any judgment received by [appellant], up to the amount owed to [USAA] pursuant to its subrogation rights." *See id.* The UIM statute grants the UIM carrier the subrogation right, and nothing in the statute says that right then reverts to the insured when his carrier waives its subrogation rights.

The purpose of UIM coverage is to provide resources equal to the policyholder's limits from which to satisfy a judgment for personal injuries or property damage caused by an underinsured tortfeasor.[9] USAA paid appellant $236,000 to satisfy the balance owed for the judgment against Kirkpatrick, pursuant to its UIM obligation.[10] Therefore, appellant was already

---

[8] The majority dismisses this portion of *Llewellyn* as dicta. Yet the majority relies on *Llewellyn*'s application of the collateral-source rule. That portion of *Llewellyn*, too, is dicta because it was not essential to the disposition of the question at issue: whether an unrelated statutory offset provision applied to the circumstances at issue. *Llewellyn*, 297 Va. at 596-98 (holding the statutory offset in Code § 8.01-35.1, invoked by the defendant Llewellyn, did not apply to the case).

[9] *See Trisvan v. Agway Ins. Co.*, 254 Va. 416, 418 (1997) ("Since 1982, [Code] § 38.2-2206 has required that automobile liability insurance policies issued in Virginia include an endorsement which obligates the insurer to pay the insured for damages caused by the operation or use of an underinsured motor vehicle.").

[10] While I agree with the majority that "waiver of the insurer's right to subrogation does not discharge the underlying tort liability," *supra* at 3, *payment* of the remaining judgment does. The only reason USAA paid Brown the $286,000 was to satisfy the balance of the owed judgment. *See* Code § 38.2-2206(G) ("Any [UIM] insurer paying a claim . . . shall be subrogated

- 12 -

made whole through his UIM insurance policy. Adopting appellant's view will allow him to recover double—first from his UIM insurer pursuant to his UIM policy, and then from the defendant directly for the same amount paid out under the policy (on top of any remainder of the judgment). That result undercuts "the default rule against double recoveries." *See Dominion Res., Inc. v. Alstom Power, Inc.*, 297 Va. 262, 270-71 (2019).

The collateral-source rule does not justify that double recovery. That doctrine instructs that "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes." *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 263 Va. 377, 387 (2002) (quoting *Schickling v. Aspinall*, 235 Va. 472, 474 (1988)). It acts only as "a *narrow* exception to both the default rule against double recoveries and the principle that compensatory damages cannot leave a plaintiff better off than before the injury." *Dominion Res., Inc.*, 297 Va. at 270-71 (emphasis added); *see also* Code § 8.01-56 ("[T]here shall be but one recovery for the same injury."); *cf. Llewellyn*, 297 Va. at 601.

Monies paid from sources collateral to the tortfeasor typically include things like medical payment coverage or health-insurance-coverage payments for medical care. Those are payments made regardless of the liability of the tortfeasor.

UIM insurance, however, is not collateral to the tortfeasor's liability. Indeed, its very purpose is to provide additional monies to satisfy the risk and exposure of the tortfeasor. In

---

to the rights of the insured to whom the claim *was paid* against the person causing the injury, death, or damage and that person's insurer, although it may deny coverage for any reason, to the extent that payment was made.").

For the same reason, the provision of Code § 8.01-455 that requires a judgment to be marked "satisfied" when full payment has been made fully supports the decision of the trial court in the instant action. USAA's payment under the UIM policy satisfied the remaining liability "for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured." Code § 38.2-2206(A).

effect, it ensures there is a pot of money from which the insured plaintiff will receive compensation via his insurance when the defendant-tortfeasor has insufficient coverage. UIM coverage, therefore, is not collateral to the tortfeasor's liability, but rather depends directly on the tortfeasor's liability. Accordingly, the collateral source rule is irrelevant here.

Nor does *Llewellyn* demand the application of the collateral-source rule to this case. Although the Court in *Llewellyn* deemed the UIM carrier's payment in that case a collateral source, the Court there faced a different set of circumstances. 297 Va. 588. *Llewellyn* involved a settlement between the plaintiff and her UIM-insurance carrier. *Id.* at 594. Before trial, the UIM carrier paid a flat settlement amount to its insured (the plaintiff White) and thereby avoided paying any other amount under the UIM policy that it otherwise would have been required to cover of the tortfeasor's adjudicated liability. *Id.* Such a side deal renders the settlement payment a collateral source independent of the tortfeasor's liability. In other words, the carrier in *Llewellyn* never made a payment in satisfaction (or partial satisfaction) of the judgment for the tortfeasor's liability because White essentially sold her UIM coverage in exchange for a fixed sum as a settlement of her own insurance policy rights. The money White received from that pre-trial settlement with her UIM carrier was therefore collateral to the tortfeasor's liability.

In contrast, this case concerns an agreement between the tortfeasor and USAA, the UIM-insurance carrier,[11] in which USAA agreed with the tortfeasor to waive its subrogation right in exchange for the tortfeasor's liability carrier defending the case. That agreement, unlike the one in *Llewellyn*, did not eliminate USAA's obligation to provide UIM-insurance coverage

---

[11] The UIM-insurance context typically involves multiple parties with various interests— the plaintiff, the plaintiff's insurer(s), the defendant, and the defendant's insurer(s). Those parties can contract with one another throughout that process. For example, the UIM statute specifically spells out how an "injured person may settle a claim with (i) a liability insurer [(i.e., the defendant's insurer)] . . . and (ii) the liability insurer's insured [(i.e., the defendant)] for the available limits of the liability insurer's coverage" without precluding the injured person from receiving a payout from her own UIM policy. Code § 38.2-2206(K).

for Brown, the policyholder. And as previously explained, such coverage under these circumstances is not collateral to the tortfeasor's liability.

The insured plaintiff is made whole—for any excess beyond the coverage amount of the tortfeasor—through plaintiff's UIM policy and by recovering any remainder of his judgment directly from the underinsured tortfeasor. By granting the subrogation right exclusively to the UIM carrier, Code § 38.2-2206 ensures that the UIM policy remains as an additional source of funds to make the insured plaintiff whole even if the carrier waives its subrogation right against the tortfeasor. Appellant's approach, on the other hand, will only enable double recovery and undermine the purpose of UIM insurance.[12] For those reasons, I respectfully dissent.

_____

[12] As an aside, I note some additional consequences of appellant's approach adopted by the majority. As a practical matter, UIM carriers sometimes contract away their subrogation rights against tortfeasors. A UIM carrier, for example, may want to avoid having an insurance company named in the lawsuit. Alternatively, the UIM carrier may want to ensure that the legal costs of a defense are handled by the tortfeasor's insurance carrier and incentivize the defendant to defend the case in exchange for not exercising its subrogation rights in later proceedings. And defendant's insurer, acting in accordance with its fiduciary duty to its insured, will likely take that deal.

But appellant's approach, adopted by the majority, guts the subrogation waiver's value as a bargaining tool for facilitating settlements. Now if the UIM carrier waives subrogation, the UIM payment is not credited against the judgment, and the plaintiff can pursue that amount from the defendant despite the waiver. The UIM carrier then cannot make any guarantees to defendant or the defendant's insurer. The majority's approach therefore renders the waiver worthless, making settlements less likely and litigation more contentious and complicated. *See Mansfield v. Bernabei*, 284 Va. 116, 124 (2012) ("The importance of encouraging compromise and settlement is unquestioned in our jurisprudence.").