PUBLISHED

Present:    Chief Judge Decker, Judges Humphreys, Beales, Huff, O'Brien, AtLee, Malveaux,
                 Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins and White
Argued at Richmond, Virginia


MICHAEL BROWN

                                                                                    OPINION BY
v.        Record No. 1100-22-1                                    JUDGE GLEN A. HUFF
                                                                               DECEMBER 19, 2023
TIMOTHY L. KIRKPATRICK


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge Designate

> Steven L. Lauer (S. Geoffrey Glick; The Joel Bieber Firm, on briefs),
> for appellant.
>
> John D. McGavin (Kara A. Schmidt; McGavin, Boyce, Bardot,
> Thorsen & Katz, PC, on brief), for appellee.[1]
>
> *Amicus Curiae*: Virginia Association of Defense Attorneys (Robert
> F. Friedman; Harmon, Claytor, Corrigan & Wellman, on brief), for
> appellee.


In April 2022, a jury awarded Michael Brown ("appellant") a judgment against Timothy

Kirkpatrick ("appellee") for damages arising from a motor vehicle accident. Appellant received

the full amount of the judgment from a combination of payments made by his own automobile

insurance carrier as well as the automobile insurance carrier for the tortfeasor motorist, appellee.

Despite these payments, appellant refused to mark the judgment satisfied.

Upon appellee's motion, pursuant to Code § 8.01-455, the Circuit Court for the City of

Newport News (the "trial court") ordered the judgment to be marked satisfied. Appellant

---

[1] The Virginia Association of Defense Attorneys moved for leave to file an *amicus* brief
in this matter along with said brief in support of appellee. This Court grants the motion.

appealed, claiming the trial court erred in crediting appellee for the payments made by appellant's own insurance carrier. Because his insurance carrier had waived its right to subrogation against the underinsured motorist, appellant argued he was free to collect the full judgment amount against appellee without any offset for the payments made under his own contract of insurance.

After considering the effect of the subrogation waiver, a divided panel of this Court agreed with appellant and reversed the trial court's order. Appellee's petition for rehearing en banc was granted, and the mandate of the panel was stayed. Upon reconsideration en banc, this Court now affirms the trial court's judgment.

BACKGROUND[2]

In May 2018, appellant and appellee were involved in an automobile accident. At the time of the accident appellee was insured by State Farm Mutual Automobile Insurance Company ("State Farm") with coverage limits of $50,000. Appellant's contract of automobile insurance was with United Services Automobile Association ("USAA") and included $300,000 in uninsured/underinsured motorist ("UIM") coverage. Appellant filed a personal injury lawsuit against appellee, and USAA was served in accordance with the UIM statute: Code § 38.2-2206.[3]

Prior to trial, USAA reached an agreement with State Farm whereby USAA would waive its right of subrogation against appellee if State Farm continued defending the case through trial.

---

[2] The pertinent facts are not in dispute. In particular, both parties agree that USAA waived its subrogation right against appellee, but they disagree on the effect of that waiver under Code § 38.2-2206.

[3] Code § 38.2-2206(F) first requires the insured to "serve a copy of the process" upon the UIM insurer in any action "instituted against the owner or operator of an uninsured or underinsured motor vehicle" when the insured intends "to rely on the uninsured or underinsured coverage provision or endorsement . . . ." It further provides that the insurer shall "have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured or underinsured motor vehicle *or in its own name*." Code § 38.2-2206(F) (emphasis added).

Following a jury trial, during which State Farm satisfied its end of the bargain, judgment was entered against appellee in the amount of $286,000. State Farm paid its coverage amount ($50,000) toward satisfaction of the judgment. And in accordance with the insurance carriers' pre-trial agreement, USAA paid the remaining balance of $236,000.[4]

Despite receiving payments totaling $286,000, the total amount of the judgment entered against appellee, appellant refused USAA's request to mark the judgment satisfied. Because he carried UIM coverage and USAA had waived its subrogation rights, appellant argued that USAA's payment should not be credited toward the judgment and that appellant was free to recover another $236,000 directly from appellee. Appellee moved the trial court to enter an order marking the judgment satisfied.[5] Over appellant's objection, the trial court granted the motion and entered the requested order.

This appeal followed.

## STANDARD OF REVIEW

Central to this appeal is the interpretation of Virginia's UIM statute, Code § 38.2-2206. "Questions of statutory interpretation . . . are subject to de novo review on appeal, and we owe no deference to the circuit court's interpretation of the statutory scheme." *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). Courts are duty bound "to construe the law as it is written." *Hampton Roads Sanitation Dist. Comm'n v. City of Chesapeake*, 218 Va. 696, 702 (1978). "When construing a statute, our primary objective 'is to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018) (quoting *Cuccinelli v. Rector & Visitors of the*

---

[4] Interest and costs were borne by State Farm.

[5] Code § 8.01-455 allows a "defendant in any judgment" to move the court to mark the judgment satisfied "upon proof that the judgment has been paid off or discharged."

*Univ. of Va.*, 283 Va. 420, 425 (2012)).  "We must determine the legislative intent by what the statute says and not by what we think it should have said."  *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541-42 (2016) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)).  "When the language of a statute is unambiguous, we are bound by the plain meaning of that language."  *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007) (citations omitted).

ANALYSIS

As required under Code § 38.2-2206(A), all automobile insurance policies issued in Virginia, or covering vehicles principally garaged or used in Virginia, must include UIM coverage.[6]  Recovery of such underinsurance benefits is "subject to the conditions set forth in [Code § 38.2-2206]."  Code § 38.2-2206(B)(4).  As relevant here, Code § 38.2-2206(G) provides that "[a]ny insurer paying a claim [for underinsurance benefits] . . . *shall* be subrogated to the rights of the insured to whom the claim was paid . . . ."  (Emphasis added).  In the insurance context, the principle of subrogation dictates that "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy."  *Subrogation*, *Black's Law Dictionary* (11th ed. 2019).

In the case at hand, USAA paid underinsurance benefits to appellant in accordance with the UIM provision of their existing policy.  As the insurer paying such claim, USAA became the owner of the subrogation rights by operation of law when it completed its payment of underinsurance benefits to appellant.  *See* Code § 38.2-2206(G).  As such, USAA alone owned the right to recoup the amount of its UIM insurance payment from appellee—the tortfeasor.  *See*

---

[6] Uninsured coverage in the statute is treated as the generic category that includes underinsurance coverage.  Code § 38.2-2206(A).

- 4 -

Code § 38.2-2206(G) (providing that the UIM carrier "shall be subrogated to the rights of the insured to whom the claim was paid . . . *to the extent* that payment was made" (emphasis added)).  Furthermore, appellant's receipt of USAA's $236,000 payment, in accordance with Code § 38.2-2206(G), precluded him from seeking to obtain that amount from appellee.  Simply put, under the plain meaning of the UIM statute, the subrogation right belonged exclusively to USAA and appellant no longer had a right to recover the amount paid by USAA directly against appellee.  *Id.*

Moreover, as sole owner, USAA was free to use the subrogation rights as it saw fit. Here, USAA used its subrogation rights to negotiate with State Farm prior to trial.[7]  Importantly, the two insurance carriers agreed that, in exchange for State Farm defending the case through trial, USAA would not exercise its subrogation right.  Agreeing to not exercise its subrogation right did *not* divest USAA of that right.  Under the provisions of Code § 38.2-2206, USAA remained the lawful owner of the subrogation right, thereby retaining the exclusive authority to choose whether to exercise it.  That power can be a powerful bargaining chip to UIM carriers involved in litigation initiated by their insureds.  Indeed, USAA's agreement to not exercise its right to collect from appellee provided valuable consideration to support its contract with State Farm.

Notwithstanding the plain meaning of the statute, appellant argues that payments of UIM benefits should be treated like medical payments or disability payments that are sometimes

---

[7] USAA and State Farm agreed that USAA's right to collect an excess judgment against State Farm's insured would be waived in exchange for State Farm providing a defense through trial.  If judgment had been within State Farms' coverage, there would have been no UIM payment and no subrogation right.  Code § 38.2-2206(G).  But in this case, the judgment exceeded State Farm's coverage, thus triggering USAA's contractual obligation to make payment pursuant to the terms of appellant's UIM coverage.

sheltered by the collateral source doctrine.[8]  Once again, the plain meaning of the words chosen by the General Assembly resolves the issue at hand.  At the outset, Code § 38.2-2206(B)(4) explicitly states that recovery of UIM benefits is "subject to the conditions set forth in [Code § 38.2-2206]."  By that language, the General Assembly created a set of rules unique to the payment and recovery of UIM benefits by automobile insurance carriers.

And unlike the subrogation rights that belong to the insurance carrier once a UIM claim is paid pursuant to Code § 38.2-2206(G), medical payments are treated differently under Virginia's motor vehicle statutes.  Code § 38.2-2216 specifically prohibits "reducing the amount of damages covered under the liability or [UIM] coverages of the policy by the amount of payments made by the insurer under the medical expense or other medical payments coverage of the policy."

Comparing the words chosen by the General Assembly in these differing statutes demonstrates the limited circumstances under which the collateral source doctrine applies.  "The maxim *expressio unius est exclusio alterius* applies when mention of a specific item in a statute implies that omitted items were not intended to be included."  *Virginia-Pilot Media Cos., LLC v.*

---

[8] The collateral source doctrine is encountered in two different contexts: (1) as an evidentiary issue during trial and (2) as a substantive matter outside of trial.  Typically, the collateral source rule is invoked to exclude from trial any evidence of payment made by the insurance carrier.  Va. R. Evid. 2:411.  The issue presented here, however, is outside of trial and is governed by the motor vehicle statute instead.  In the case at bar, appellant was made whole, and appellee remained liable to USAA only for UIM insurance payments paid by USAA, although State Farm successfully settled that liability with USAA in exchange for bearing the cost of defense through trial.  Generally, the collateral source doctrine instructs that "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes."  *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 263 Va. 377, 387 (2002) (quoting *Schickling v. Aspinall*, 235 Va. 472, 474 (1988)).  This doctrine, however, is "a narrow exception to both the default rule against double recoveries and the principle that compensatory damages cannot leave a plaintiff better off than before the injury."  *Dominion Res. Inc. v. Alstom Power, Inc.*, 297 Va. 262, 270-01 (2019).  Substantively, medical benefits are the only insurance payment that may not reduce the amount of damages.  *See* Code § 38.2-2216.

*Dow Jones & Co.*, 280 Va. 464, 468-69 (2010). "[W]hen the General Assembly has used specific language in one instance[] but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowner's Ass'n*, 282 Va. 330, 337 (2011). Based on the words chosen by the General Assembly, payment of medical expenses is subject to the collateral source doctrine while payment of UIM coverage is not.

Lastly, appellant relies on *Llewellyn v. White*, 297 Va. 588 (2019), to apply the collateral source doctrine and recover from appellee. *Llewellyn* dealt with the common law principle, modified by statute in Virginia, that settlement with one tortfeasor was a settlement as to all. *Llewellyn*, 297 Va. at 596. In that case, the Supreme Court clarified that Code § 8.01-35.1 did not bar recovery against a tortfeasor where the UIM insurance carrier settled with its insured, before suit, such that no UIM coverage existed at the time of trial. *Id.* at 603. The Court recognized that the UIM coverage sounded in contract and therefore was not subject to the laws regarding joint tortfeasors.[9] *Id.* at 601-03.

*Llewellyn* is distinguishable from this matter based on the position of the various parties. In *Llewellyn*, the insured tort victim settled with her own insurer prior to trial. Such agreement did not include the opposing party. Here, in contrast, the tort victim's insurance carrier—USAA—obtained the subrogation right when it paid appellant's claim but then contracted away that right with the *opposing party*. The inclusion of appellee and appellee's insurer here had no

---

[9] After making its ruling, the Court provided further explanation suggesting that its "conclusion is reflected by and consistent with the structure of Virginia's UIM statute, Code § 38.2-2206." *Llewellyn*, 297 Va. at 598. It went on to say, "if there is an agreement between the UIM carrier and the defendant, the defendant may be entitled to credit against any judgment received by the plaintiff, up to the amount owed . . . pursuant to [the UIM carrier's] subrogation rights." *Id.* at 600. The Supreme Court also pointed out that in its case there was no agreement involving the tortfeasor. *Id.* The UIM carrier was therefore no longer involved because it had settled its coverage with its insured before litigation was pursued. *Id.*

effect on USAA's obligations to appellant under their contract. But, as discussed above, the contractual relationship in which USAA negotiated with its subrogation rights does not make the UIM payments to appellant a collateral source. Accordingly, appellant's reliance on *Llewellyn* is misplaced.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.

Humphreys, J., with whom Chaney and Lorish, JJ. join, dissenting.

Under Code § 8.01-455, judgment-debtors may only escape their tort liability if their debt has been "paid off or discharged." Because nothing in the record before this Court indicates that Kirkpatrick's debt was paid off or discharged, I respectfully dissent from the majority's holding that Kirkpatrick was entitled to have his judgment-debt set aside.

Our Supreme Court has applied the collateral source rule to UIM benefits in *Llewellyn v. White*, 297 Va. 588 (2019), and the majority ignores this conclusion in finding that the collateral source rule does not apply to UIM benefits. *Llewellyn* makes clear that Kirkpatrick's tort liability was not "paid off" as a result of USAA fulfilling its UIM obligations. The *Llewellyn* Court's holding on this point is plain: "[a] person who is negligent and injures another owes to the latter full compensation for the injury inflicted[,] . . . and payment for such injury from a collateral source in no way relieves the wrongdoer of [the] obligation." *Id.* at 601 (second, third, and fourth alterations in original) (quoting *Acuar v. Letourneau*, 260 Va. 180, 189 (2000)). Specifically, the Court noted that "damages, recoverable of personal injuries inflicted through the negligence of another are not to be reduced by reason of the fact that the injured party had been partly compensated for his loss by insurance which he has procured and for which he has paid." *Id.* Admittedly, this doctrine permits a tort plaintiff to receive a double recovery, but as the Court held in *Llewellyn*, "the better option is to allow plaintiff to retain the 'windfall' that results from his foresight in voluntarily electing to purchase [UIM] coverage rather than allowing defendant . . . to be the ultimate beneficiary of plaintiff's decision to procure additional insurance coverage." *Id.* at 602 (quoting *Hairston v. Harward*, 821 S.E.2d 384, 394 (N.C. 2018)).[10]

---

[10] The majority suggests Virginia courts narrowly apply the collateral source rule. To the contrary, Virginia has a long history of applying the rule to benefits "wholly independent of the defendant." *Johnson v. Kellam*, 162 Va. 757, 764 (1934).

- 9 -

Because Kirkpatrick is not entitled to credit for the payments USAA made to Brown under Brown's UIM coverage, Kirkpatrick's debt has not been "paid off" by virtue of those payments. The remaining question, then, is whether Kirkpatrick's debt has been "discharged." The majority appears to hold that a subrogee has the authority to discharge a subrogation claim to the detriment of the subrogor. Even assuming that a subrogee has that authority, this holding presupposes that USAA did, in fact, discharge the debt Kirkpatrick owed to USAA pursuant to its subrogation rights.[11] The record does not support this conclusion.

The record shows only that USAA agreed with Kirkpatrick that it was "willing to waive subrogation against [Kirkpatrick] if State Farm continues the defense on behalf of Defendant, Timothy Kirkpatrick, through the trial of this matter." To reach the conclusion that Kirkpatrick is entitled to relief from his tort liability, the majority necessarily equates the waiver of the subrogation right with the discharge of the underlying tort liability. This conflating of waiver and discharge misunderstands the nature of the subrogation right.

The waiver of the right to pursue recovery, a right that is wholly derivative of the insured's right, is conceptually distinct from a settlement, release, or discharge of the underlying debt. In addressing the fact that the subrogee waived their subrogation right with the subrogor the *Llewellyn* Court noted that "[the subrogee] agreed with [plaintiff] not to interfere with *[her] right* to collect from [defendant] any amounts [defendant] was found to owe [plaintiff]." *Llewellyn*, 297 Va. at 600 (emphasis added). Simply put, the subrogation right is the right of the

---

[11] Virginia courts have not previously authoritatively decided whether a subrogee has the authority to settle a subrogation claim to the detriment of the subrogor and at least two of our sister state courts have reached different conclusions on the question. *Compare Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1027-28 (Colo. 2011) (holding that an insurance company's settlement of a nearly $200,000 subrogation claim for $175,000 with the tortfeasor reduced the insured subrogor's tort judgment by the full $200,000), *with Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 301 P.3d 387 (N.M. 2013) (holding that a defendant may not obtain a subrogation lien against the recovery a plaintiff would obtain from that same defendant).

subrogee (USAA in this instance) to stand in the shoes of the insured (Brown) and pursue a third party (Kirkpatrick) for a loss caused by that third party. On the other hand, a "discharge" is "[a]ny method by which a legal duty is extinguished; esp., the payment of a debt or satisfaction of some other obligation." *Discharge*, *Black's Law Dictionary* (11th ed. 2019). In this case, the majority conflates the very different concepts of "waiver" and "discharge."

Waiver is the "voluntary relinquishment or abandonment" of "a legal right or advantage." *Waiver*, *Black's Law Dictionary*, *supra*. Had USAA exercised its right of subrogation instead of waiving it and then agreed to release Kirkpatrick from his tort liability in exchange for State Farm's defense of the claim at trial, then perhaps Kirkpatrick's tort liability would be "discharged."[12] But instead, USAA simply agreed with Kirkpatrick to abandon its right to stand in Brown's shoes and seek to recover from Kirkpatrick any amounts he owed to Brown pursuant to its subrogation right. In other words, in this case, USAA and Kirkpatrick bargained for a waiver of USAA's subrogation right—it did *not* bargain *for* the discharge of Kirkpatrick's underlying tort liability. The majority seems to consider this a distinction without a difference, but precision in its application is the hallmark of the law and eliding the difference between a waiver of a subrogation right and the discharge of underlying tort liability undermines that precision.

The distinction between waiver of a right to subrogation and the discharge of a tortfeasor's underlying tort liability is only one reason the majority errs. A second is that the majority mistakes the UIM's posture upon payment of a claim as "subrogated to the rights of the insured" for the injured party having *assigned* its rights to recover to the UIM. An assignment is a transfer of a property right, and an absolute assignment "leaves the assignor no interest in the

---

[12] I reiterate that this conclusion first requires a holding that the subrogee indeed had the authority to settle the underlying tort liability.

assigned property or right." *Assignment*, *Black's Law Dictionary*, *supra*. When the majority holds that "USAA became the *owner* of the subrogation rights by operation of law when it completed its payment of underinsurance benefits to appellant," that "USAA alone *owned* the right to recoup the amount of its UIM insurance payment from appellee," and that "the subrogation right *belonged* exclusively to USAA," it essentially holds that USAA's fulfillment of its contractual obligation to pay underinsurance benefits to its insured operated to assign USAA the exclusive right to recover the amount of its UIM insurance payment.

But subrogation and assignment are not synonymous. *Nationwide Mut. Ins. Co. v. Minnifield*, 213 Va. 797, 799 (1973). Our Supreme Court, examining a contractual right of subrogation, characterized subrogation as a right of *reimbursement* "against the fund recovered" by the injured party who had also received insurance payments under a policy. *Collins v. Blue Cross*, 213 Va. 540, 544 (1973) (recognized as abrogated in part by statute in *Reynolds Metals Co. v. Smith*, 218 Va. 881, 883 (1978)); *cf. State Farm Mut. Auto. Ins. Co. v. Kern*, 976 N.E.2d 716, 720 (Ind. Ct. App. 2012) (a subrogation clause "provides that once an insured receives payment from a third-party tortfeasor, the insurer is entitled to reimbursement for the amount of benefits it previously paid to the insured"). Unlike the operation of an absolute assignment, upon a waiver of subrogation, the insured retains the right to recover the full amount of damages against the tortfeasor. For this reason, we agree with the Indiana Court of Appeals that "when a judgment is entered against a third-party tortfeasor, said judgment is not satisfied when the plaintiff's insurer compensated the plaintiff due to the third-party tortfeasor's being underinsured." *Kern*, 976 N.E.2d at 720. The tortfeasor "is not entitled to benefit from [the injured party]'s carefulness and assiduousness in obtaining underinsured motorist insurance coverage." *Id.* Put differently, when a UIM carrier "explicitly waive[s] its rights to subrogation" it "never possessed the right to recover the UIM benefits" so "the claim to recover such damages

- 12 -

remained at all times" with the insured plaintiff. *Voge v. Anderson*, 512 N.W.2d 749, 751 (Wis. 1994).

Additionally, the North Carolina case on which the *Llewellyn* Court chiefly relied involved this exact situation where the subrogee "waived its subrogation rights against defendant." *Hairston*, 821 S.E.2d at 387. The *Hairston* court saw "no reason why defendant should be entitled to different treatment simply because [the insurer] elected to waive its statutory subrogation rights rather than attempting to enforce them." *Id.* at 395.

USAA bargained away its right to pursue recovery from Kirkpatrick in exchange for his appearance and participation at trial. Kirkpatrick received the benefit of that bargain because USAA no longer has the right to recover against him. That agreement has no impact on *Brown's* right to recover against Kirkpatrick. Like the North Carolina Supreme Court, I see no reason why Kirkpatrick should be able to escape his tort liability because USAA declined to pursue its subrogation rights.

Accordingly, because I do not think that this record supports the conclusion that Kirkpatrick's debt was "paid off" or "discharged" as the statute requires, I would hold that the judgment of the circuit court should be reversed. I, therefore, respectfully dissent.

*PUBLISHED*

*VIRGINIA:*

*In the Court of Appeals of Virginia on*  **Tuesday**  *the*  **8th**  *day of*  **August, 2023**.

Michael Brown,                                                                                          Appellant,

 against          Record No. 1100-22-1
                        Circuit Court No. CL2001195F-15

Timothy L. Kirkpatrick,                                                                       Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Humphreys, Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Lorish, Callins and White


On July 19, 2023 came the appellee, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on July 5, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,
                        Teste:

                                    A. John Vollino, Clerk

                                    *original order signed by a deputy clerk of the*
                        By:    *Court of Appeals of Virginia at the direction*
                                    *of the Court*

                                    Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present: Judges Humphreys, Huff and Lorish
Argued by videoconference

MICHAEL BROWN

OPINION BY
v.      Record No. 1100-22-1          JUDGE ROBERT J. HUMPHREYS
JULY 5, 2023

TIMOTHY L. KIRKPATRICK

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Steven L. Lauer (S. Geoffrey Glick; The Joel Bieber Firm, on briefs),
for appellant.

John D. McGavin (Kara A. Schmidt; McGavin, Boyce, Bardot,
Thorsen & Katz, PC, on brief), for appellee.

Michael Brown appeals from a ruling of the Newport News Circuit Court granting

appellee Timothy Kirkpatrick's motion to mark judgment satisfied following Brown's insurance

carrier USAA tendering its underinsured motorist (UIM) coverage obligations to Brown. Brown

contends that Kirkpatrick should not have been entitled to any credit or offset for payments made

by USAA to Brown.

BACKGROUND

On April 20, 2022, a Newport News jury awarded Michael Brown a judgment of

$286,000 against Timothy L. Kirkpatrick for damages arising out of a motor vehicle accident.[1]

Prior to trial, USAA, Brown's insurance company (involved in the case as an underinsured

motorist carrier), informed Kirkpatrick that "USAA is willing to waive subrogation against

[Kirkpatrick] if State Farm [Kirkpatrick's insurer] continues the defense . . . through the trial of

_____

[1] The underlying facts of the tort suit are not relevant for this appeal.

this matter."[2] USAA's right to subrogation was derived from Code § 38.2-2206(G) which provides that "[a]ny insurer paying [an underinsured motorist claim] shall be subrogated to the rights of the insured to whom the claim was paid against the person causing the . . . damage and that person's insurer."

Following the verdict, State Farm paid out its per person policy limit of $50,000, plus costs, on behalf of Kirkpatrick. After the State Farm payment, USAA sent Brown a check for $236,000 pursuant to Brown's underinsured motorist coverage. In the letter accompanying that check, USAA requested that Brown ask that the circuit court "mark this matter as 'paid and satisfied.'" Brown responded that he believed that he was entitled to pursue recovery against Kirkpatrick in light of USAA's waiver of its right to subrogation.

Following Brown's refusal, Kirkpatrick filed a motion under Code § 8.01-455 requesting that the circuit court enter an order marking the judgment as satisfied.[3] At the hearing on the motion Kirkpatrick argued that "USAA indicated that they would satisfy their share post-verdict and waive subrogation against Mr. Kirkpatrick if he appeared for trial." However, Kirkpatrick argued that the waiver of USAA's right to pursue Kirkpatrick did not mean that Brown regained the right to pursue Kirkpatrick. Furthermore, Kirkpatrick asserted that USAA joined in its motion to have the judgment marked paid and satisfied. USAA's attorney was present at the hearing and confirmed that USAA had not "formally joined in the motion, but [Kirkpatrick's assertion] was correct" and that "there was a waiver of subrogation in exchange with [sic] the understanding that [State Farm] weren't [sic] going to tender and do the defense of the case." Brown argued that the UIM payment was a collateral source and that Kirkpatrick's obligation to

---

[2] Kirkpatrick notes that this promise to waive subrogation was intended to entice Kirkpatrick to attend the trial and "undertake [his] best effort" in his defense.

[3] Code § 8.01-455 allows a "defendant in any judgment" to move the court to mark the judgment satisfied "upon proof that the judgment has been paid off or discharged."

pay the judgment was not extinguished simply because USAA waived its right to pursue him in Brown's place.

The circuit court agreed with Kirkpatrick "for the reasons enunciated again by counsel for the defense." Brown now appeals.

ANALYSIS

The question raised by this case is whether an insurer's waiver of its right to subrogation against a tortfeasor precludes the insured-plaintiff from recovering on a judgment against the tortfeasor. This is a question of law that we review de novo. For the reasons that follow, we hold that the mere waiver of the insurer's right to subrogation does not discharge the underlying tort liability.

"Subrogation is merely the 'substitution of one person in the place of another with reference to a lawful claim, demand or right so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.'" *Llewellyn v. White*, 297 Va. 588, 599 (2019) (quoting *Subrogation*, *Black's Law Dictionary* (4th ed. 1957)). In the insurance context, an insurer who has paid a loss becomes a subrogee to the rights of their insured against the responsible party with respect to any loss covered by the policy. *Id.* The insurer's right of subrogation is wholly derivative of the subrogor's rights; in other words, "a subrogated insurer stands in shoes of an insured, and has no greater rights than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have." Couch on Insurance § 222:5 (3d ed. 2022) (footnotes omitted).

Virginia has codified a requirement that all contracts for automobile insurance must include an under- or uninsured motorist coverage provision. Code § 38.2-2206(A). The UIM coverage requires the insurance company to pay its insured for damages caused by a driver

whose own insurance coverage is insufficient to cover the insured's damages. Code

§ 38.2-2206(B). The statute provides that,

> Any insurer paying a claim under the endorsement or provisions
> required by subsection A [UIM coverage] *shall be subrogated* to
> the rights of the insured to whom the claim was paid against the
> person causing the injury, death, or damage and that person's
> insurer, although it may deny coverage for any reason, to the
> extent that payment was made.

Code § 38.2-2206(G) (emphasis added).

In *Llewellyn v. White*, the Virginia Supreme Court held that an insurance company's

agreement with the *plaintiff* to waive its right of subrogation did not relieve the tortfeasor's

judgment debt. The plaintiff settled her UIM claim with her insurer pre-trial for $750,000. 297

Va. at 593. As part of that settlement the UIM insurer agreed with the plaintiff that it would

waive its rights to be subrogated to the rights the plaintiff had against the defendant. *Id.* at 594.

The case proceeded to trial, and the plaintiff was awarded $1.5 million in damages. *Id.* The

defendant filed a motion to have her judgment reduced by the $750,000 paid by plaintiff's UIM

carrier pursuant to Code § 8.01-35.1.[4] *Id.* The Supreme Court held that the UIM insurer was not

a joint tortfeasor and that the payment to the plaintiff was a collateral source; therefore, the

defendant remained liable for the full amount of the judgment. *Id.* at 602.

The collateral source rule, as applied in *Llewellyn*, establishes that "a person who is

negligent and injures another owes to the latter full compensation for the injury inflicted[,] . . .

and payment for such injury from a collateral source in no way relieves the wrongdoer of [the]

obligation." *Id.* at 601 (alterations in original) (quoting *Acuar v. Letourneau*, 260 Va. 180, 189

(2000)). Specific to the insurance context, the collateral source rule is that "damages,

recoverable of personal injuries inflicted through the negligence of another are not to be reduced

---

[4] Code § 8.01-35.1 provides that a release of one joint tortfeasor allows for a set-off for
the other joint tortfeasor(s) by the amount settled by the released tortfeasor.

by reason of the fact that the injured party had been partly compensated for his loss by insurance which he has procured and for which he has paid." *Id.* The collateral source rule and the principle that an injured party should not be entitled to a double recovery are fundamentally at odds. *Id.* at 600. The Virginia Supreme Court determined that in resolving this tension "the better option is to allow plaintiff to retain the 'windfall' that results from his foresight in voluntarily electing to purchase [UIM] coverage rather than allowing defendant . . . to be the ultimate beneficiary of plaintiff's decision to procure additional insurance coverage." *Id.* at 602 (quoting *Hairston v. Howard*, 821 S.E.2d 384, 393 (N.C. 2018)).

On appeal, Brown argues that the logic of *Llewellyn* applies with equal force to a situation where the insurance company has agreed with the *defendant* to waive its subrogation rights. We agree.

First, we note that Code § 8.01-455 only entitles Kirkpatrick to have the judgment marked as satisfied upon proof that the judgment has been "paid off or discharged." It is undisputed that the judgment has not been "paid off." Following State Farm's payment of $50,000, Kirkpatrick has not paid any amount of the judgment. Additionally, *Llewellyn* is clear that payments to a plaintiff by a UIM carrier are collateral to the defendant and implicate the collateral source rule such that USAA's payments to Brown cannot lead to the judgment being "paid off."

Kirkpatrick contends that *Llewellyn* is inapposite on this point because, in this case, the insurer waived its subrogation rights with the defendant, whereas in *Llewellyn*, the insurer waived its subrogation rights as part of its settlement agreement with the plaintiff. Kirkpatrick contends that while USAA has waived its subrogation rights as to Kirkpatrick, it retains some enforceable subrogation rights against Brown. This argument misconceives the nature of the subrogation right.

- 5 -

Our Supreme Court has distinguished subrogation from reimbursement. In *Reynolds Metals Co. v. Smith*, 218 Va. 881, 884 (1978), the Court ruled that a group accident and health insurance "non-duplication of benefits" provision did not violate the anti-subrogation statute then found in Code § 38.1-342.2 (codified as amended at Code § 38.2-3405). The statute prohibited subrogation provisions in medical expenses paid from health insurance plans. *Id.* The policy required payees under the plan to reimburse the insurer for any amount received from a third party in compensation for their injuries. *Id.* The Court reasoned that subrogation, by definition, requires that the subrogee obtain the right to proceed against a third party and that the non-duplication provision provided no such right. *Id.* at 883. Accordingly, the reimbursement provision was not prohibited by statute. *Id.* at 884.

For purposes of this case, *Reynolds Metals Co.* contradicts Kirkpatrick's argument that USAA retains some subrogation right against Brown. *Reynolds Metals Co.* directly states that an insurer's right to reimbursement from its insured is *not* equivalent to their right of subrogation against the defendant. *Id.* Brown's insurance policy *may* require him to reimburse USAA for any recovery that he obtains from Kirkpatrick, but that fact does not mean that Kirkpatrick is allowed to escape his tort liability. Kirkpatrick has failed to articulate what USAA's subrogation right *against* Brown would allow it to do. USAA has waived its right to pursue Kirkpatrick for the money it paid to Brown. That does not mean that Kirkpatrick's obligation has been paid off. *See Llewellyn*, 297 Va. at 599 ("Payment by the plaintiff's UIM carrier to its insured does not entitle an underinsured tortfeasor to an offset or credit on the judgment against her. It merely

*allows* the UIM carrier to substitute itself for its insured in seeking to enforce any judgment against her." (emphasis added)).[5]

Additionally, the record before this Court does not support a finding that the judgment was discharged. Assuming, without deciding, that a subrogee has the authority to settle its subrogation claim to the detriment of the subrogor, the record does not establish that USAA truly "settled" its subrogation claim against Kirkpatrick.[6] The record shows that USAA agreed with Kirkpatrick that it was "willing to waive subrogation against [Kirkpatrick] if State Farm continues the defense on behalf of Defendant, Timothy Kirkpatrick, through the trial of this matter." The waiver of the right to pursue recovery that is derivative of the insured's right is conceptually distinct from a settlement, release, or discharge of the underlying debt. The subrogation right is the right to pursue a third party for a loss caused by that third party. "Discharge" is "[a]ny method by which a legal duty is extinguished; esp., the payment of a debt or satisfaction of some other obligation." *Discharge*, *Black's Law Dictionary* (11th ed. 2019). The waiver of the right to pursue a recovery of another's claim, standing alone, does not extinguish the underlying claim.

---

[5] Kirkpatrick also argues that USAA's waiver of its subrogation rights does not mean that Brown automatically regained the right to pursue Kirkpatrick. This argument is refuted by the derivative nature of the subrogation right as well as by *Llewellyn*, 297 Va. at 600 ("Erie agreed with [plaintiff] not to interfere with *[her] right* to collect from [defendant] any amounts [defendant] was found to owe [plaintiff]." (emphasis added)).

[6] Virginia courts have not decided whether a subrogee has the authority to settle a subrogation claim to the detriment of the subrogor and at least two of our sister state courts have reached different conclusions on the question. *Compare Ferrelgas, Inc. v. Yeiser*, 247 P.3d 1022, 1027-28 (Colo. 2011) (holding that an insurance company's settlement of a nearly $200,000 subrogation claim for $175,000 with the tortfeasor reduced the insured subrogor's tort judgment by the full $200,000), *with Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 301 P.3d 387 (N.M. 2013) (holding that a defendant may not obtain a subrogation lien against the recovery a plaintiff would obtain from that same defendant). Because we hold that USAA simply waived its right to subrogation as opposed to settling its subrogation claim, we need not reach whether a subrogee may settle its subrogation claim pretrial to the detriment of the subrogor.

Based on the record before us, USAA's subrogation right was the only mechanism that permitted it to interfere with Brown's right to recover his judgment against Kirkpatrick. By waiving its right to subrogation, USAA effectively disclaimed any interest in the judgment itself.[7]

Kirkpatrick points to nonbinding dicta in *Llewellyn* to contend that he is entitled to be released from his liability. The *Llewellyn* Court wrote that:

> By statute, the right of subrogation belongs to the UIM carrier. Code § 38.2-2206(G). It can exercise or waive that right as it pleases. If it desires to do so, the UIM carrier can make an agreement with a defendant not to pursue the recovery that the carrier's subrogation rights entitle it to seek from the defendant. In such an instance, if there is an agreement between the UIM carrier and the defendant, the defendant may be entitled to credit against any judgment received by the plaintiff, up to the amount owed to the UIM insurer pursuant to its subrogation rights. However, no such agreement was struck in this case. In this instance, [the UIM carrier] sought no consideration from and made no agreement with Llewellyn, [the defendant,] to forgive any of the amount that [the UIM carrier] had the statutory right to seek from Llewellyn. Instead, [the UIM carrier] agreed with White, [the plaintiff,] not to interfere with White's right to collect from Llewellyn any amounts Llewellyn was found to owe White. Llewellyn is not entitled to any credit for money she owes pursuant to a judgment against her that she has not paid.

*Llewellyn*, 297 Va. at 600. Kirkpatrick argues that the dicta should apply to this case and that because USAA agreed "not to pursue the recovery that the carrier's subrogation rights entitle[d] it to seek," he is "entitled to credit against any judgment received by the plaintiff, up to the amount owed to the UIM insurer pursuant to its subrogation rights." *Id.*

We find the dicta unpersuasive. "Dicta cannot 'serve as a source of binding authority in American jurisprudence.'" *Newman v. Newman*, 42 Va. App. 557, 566 (2004) (en banc)

---

[7] As noted, USAA *may* have a right to reimbursement from Brown pursuant to its policy; however, the policy is not in the record and this case does not require us to determine whether USAA's contract with Brown would entitle it to any proceeds that Brown ultimately recovers from Kirkpatrick.

- 8 -

(quoting *United States v. Pasquantino*, 336 F.3d 321, 329 (4th Cir. 2003) (en banc)). "Dicta in a prior decision generally refers to that portion of an opinion 'not essential' to the disposition in the case." *Id.* (quoting *Cent. Green Co. v. United States*, 531 U.S. 425, 431 (2001)). The hypothetical counterfactual raised by the *Llewellyn* Court of a UIM carrier agreeing with a defendant to forgo recovery was not essential to its holding that payments by a UIM carrier were a collateral source and not subject to set-off under Code § 8.01-35.1; accordingly, it does not bind us.

The *Llewellyn* Court provided no rationale for why the mere agreement to forgo the subrogee's recovery would entitle the tortfeasor to credits against the underlying judgment. Indeed, the result suggested by the dicta runs contrary to the rationale of the actual holding of *Llewellyn*. When a plaintiff has been compensated by a third party for damages caused by a tortfeasor, a windfall is inevitable. Either the plaintiff secures a double recovery, or the tortfeasor escapes responsibility for damages caused. The collateral source rule requires that the defendant does not receive that windfall. When subrogation rights exist, however, neither the plaintiff nor the defendant receive a windfall. Where the subrogee waives those rights to recover, then the public policy balancing of the collateral source rule comes back into play. Indeed, that was the basis of the *Llewellyn* decision: the Court acknowledged that the waiver of subrogation could lead to a double recovery but noted that the "'law contains no rigid rule against overcompensation,' and 'making tortfeasors pay for the damage they cause can be more important than preventing overcompensation.'" *Llewellyn*, 297 Va. at 601 (quoting *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 219 (1994)).

Additionally, the North Carolina case on which the *Llewellyn* Court chiefly relied, involved a situation where the subrogee "waived its subrogation rights against defendant." *Hairston*, 821 S.E.2d at 387. The *Hairston* court saw "no reason why defendant should be

entitled to different treatment simply because [the insurer] elected to waive its statutory subrogation rights rather than attempting to enforce them." *Id.* at 395. USAA bargained away its right to pursue recovery from Kirkpatrick in exchange for his appearance and participation at trial. Kirkpatrick received the benefit of that bargain because USAA no longer has the right to recover against him. That agreement has no impact on Brown's right to recover against Kirkpatrick. We see no reason why Kirkpatrick should be able to escape his tort liability because USAA declined to pursue its subrogation rights.

Finally, Kirkpatrick argues that it "would be against public policy to allow [Brown] a double recovery at the expense of USAA." This misunderstands the consequences of applying the collateral source rule. USAA *could* have recovered from Kirkpatrick and prevented a double recovery, but it chose not to. Allowing Brown to recover against Kirkpatrick does not come at USAA's expense, but Kirkpatrick's. This result is perfectly in line with the result dictated by the collateral source rule and the rationale, if not the dicta, of *Llewellyn*.

## CONCLUSION

Because Kirkpatrick's judgment debt has neither been paid off nor discharged, he was not entitled to relief under Code § 8.01-455, and the circuit court erred by granting his motion to mark the judgment as paid and satisfied. Accordingly, we reverse the ruling of the circuit court and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

Huff, J., dissenting.

Code § 38.2-2206 governs uninsured/underinsured motorist insurance ("UIM") coverage, such as the policy appellant had with USAA. Subsection G of that statute states, in relevant part, that "[a]ny insurer . . . shall be subrogated to the rights of the insured to whom the claim was paid against the person causing the injury[] . . . and that person's insurer." Code § 38.2-2206(G). In the insurance context, the principle of subrogation dictates that "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Subrogation*, *Black's Law Dictionary* (11th ed. 2019). Thus, by statute, when an uninsured or underinsured driver causes an accident with an UIM-insured driver, and the insured driver obtains a judgment against the underinsured driver, the UIM insurer enjoys the statutory right to enforce that judgment against the underinsured driver to recoup its costs from paying pursuant to the UIM policy.

The parties all agree USAA waived its subrogation right against appellee. Yet they differ on the effect of that waiver. Appellant argues USAA's waiver means all rights to pursue the recovery essentially revert to him, so he can claim the remainder of the judgment from appellee, despite the UIM-policy payment. The majority agrees.

Appellee counters that the right belongs exclusively to the UIM carrier. Thus, when waived by the carrier, that right is extinguished and any payment from a UIM policy is credited toward satisfaction of the judgment; the insured plaintiff may seek to enforce his judgment against the tortfeasor only to the extent of any remainder. Because I agree with appellee, I respectfully dissent.

The Virginia Supreme Court in *Llewellyn v. White*, 297 Va. 588, 600 (2019), described the nature of a UIM insurer's statutory subrogation right under Code § 38.2-2206(G). That right, the Court wrote, "belongs to the UIM carrier. It can exercise or waive that right as it pleases."

*Id.* Accordingly, "the UIM carrier can make an agreement with the [underinsured] defendant not to pursue the recovery that the carrier's subrogation rights entitle it to seek from the defendant." *Id.* Under such an agreement, "the defendant may be entitled to credit against any judgment received by the plaintiff, up to the amount owed to the UIM insurer pursuant to its subrogation rights." *Id.*[8]

That is what happened here. Consistent with *Llewellyn*, USAA—through its waiver—agreed with appellee that it would not enforce the judgment against him to recoup the cost of the UIM-policy payment. Accordingly, appellee was "entitled to credit against any judgment received by [appellant], up to the amount owed to [USAA] pursuant to its subrogation rights." *See id.* The UIM statute grants the UIM carrier the subrogation right, and nothing in the statute says that right then reverts to the insured when his carrier waives its subrogation rights.

The purpose of UIM coverage is to provide resources equal to the policyholder's limits from which to satisfy a judgment for personal injuries or property damage caused by an underinsured tortfeasor.[9] USAA paid appellant $236,000 to satisfy the balance owed for the judgment against Kirkpatrick, pursuant to its UIM obligation.[10] Therefore, appellant was already

---

[8] The majority dismisses this portion of *Llewellyn* as dicta. Yet the majority relies on *Llewellyn*'s application of the collateral-source rule. That portion of *Llewellyn*, too, is dicta because it was not essential to the disposition of the question at issue: whether an unrelated statutory offset provision applied to the circumstances at issue. *Llewellyn*, 297 Va. at 596-98 (holding the statutory offset in Code § 8.01-35.1, invoked by the defendant Llewellyn, did not apply to the case).

[9] *See Trisvan v. Agway Ins. Co.*, 254 Va. 416, 418 (1997) ("Since 1982, [Code] § 38.2-2206 has required that automobile liability insurance policies issued in Virginia include an endorsement which obligates the insurer to pay the insured for damages caused by the operation or use of an underinsured motor vehicle.").

[10] While I agree with the majority that "waiver of the insurer's right to subrogation does not discharge the underlying tort liability," *supra* at 3, *payment* of the remaining judgment does. The only reason USAA paid Brown the $286,000 was to satisfy the balance of the owed judgment. *See* Code § 38.2-2206(G) ("Any [UIM] insurer paying a claim . . . shall be subrogated

made whole through his UIM insurance policy. Adopting appellant's view will allow him to recover double—first from his UIM insurer pursuant to his UIM policy, and then from the defendant directly for the same amount paid out under the policy (on top of any remainder of the judgment). That result undercuts "the default rule against double recoveries." *See Dominion Res., Inc. v. Alstom Power, Inc.*, 297 Va. 262, 270-71 (2019).

The collateral-source rule does not justify that double recovery. That doctrine instructs that "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes." *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 263 Va. 377, 387 (2002) (quoting *Schickling v. Aspinall*, 235 Va. 472, 474 (1988)). It acts only as "a *narrow* exception to both the default rule against double recoveries and the principle that compensatory damages cannot leave a plaintiff better off than before the injury." *Dominion Res., Inc.*, 297 Va. at 270-71 (emphasis added); *see also* Code § 8.01-56 ("[T]here shall be but one recovery for the same injury."); *cf. Llewellyn*, 297 Va. at 601.

Monies paid from sources collateral to the tortfeasor typically include things like medical payment coverage or health-insurance-coverage payments for medical care. Those are payments made regardless of the liability of the tortfeasor.

UIM insurance, however, is not collateral to the tortfeasor's liability. Indeed, its very purpose is to provide additional monies to satisfy the risk and exposure of the tortfeasor. In

---

to the rights of the insured to whom the claim *was paid* against the person causing the injury, death, or damage and that person's insurer, although it may deny coverage for any reason, to the extent that payment was made.").

For the same reason, the provision of Code § 8.01-455 that requires a judgment to be marked "satisfied" when full payment has been made fully supports the decision of the trial court in the instant action. USAA's payment under the UIM policy satisfied the remaining liability "for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured." Code § 38.2-2206(A).

effect, it ensures there is a pot of money from which the insured plaintiff will receive compensation via his insurance when the defendant-tortfeasor has insufficient coverage. UIM coverage, therefore, is not collateral to the tortfeasor's liability, but rather depends directly on the tortfeasor's liability. Accordingly, the collateral source rule is irrelevant here.

Nor does *Llewellyn* demand the application of the collateral-source rule to this case. Although the Court in *Llewellyn* deemed the UIM carrier's payment in that case a collateral source, the Court there faced a different set of circumstances. 297 Va. 588. *Llewellyn* involved a settlement between the plaintiff and her UIM-insurance carrier. *Id.* at 594. Before trial, the UIM carrier paid a flat settlement amount to its insured (the plaintiff White) and thereby avoided paying any other amount under the UIM policy that it otherwise would have been required to cover of the tortfeasor's adjudicated liability. *Id.* Such a side deal renders the settlement payment a collateral source independent of the tortfeasor's liability. In other words, the carrier in *Llewellyn* never made a payment in satisfaction (or partial satisfaction) of the judgment for the tortfeasor's liability because White essentially sold her UIM coverage in exchange for a fixed sum as a settlement of her own insurance policy rights. The money White received from that pre-trial settlement with her UIM carrier was therefore collateral to the tortfeasor's liability.

In contrast, this case concerns an agreement between the tortfeasor and USAA, the UIM-insurance carrier,[11] in which USAA agreed with the tortfeasor to waive its subrogation right in exchange for the tortfeasor's liability carrier defending the case. That agreement, unlike the one in *Llewellyn*, did not eliminate USAA's obligation to provide UIM-insurance coverage

---

[11] The UIM-insurance context typically involves multiple parties with various interests— the plaintiff, the plaintiff's insurer(s), the defendant, and the defendant's insurer(s). Those parties can contract with one another throughout that process. For example, the UIM statute specifically spells out how an "injured person may settle a claim with (i) a liability insurer [(i.e., the defendant's insurer)] . . . and (ii) the liability insurer's insured [(i.e., the defendant)] for the available limits of the liability insurer's coverage" without precluding the injured person from receiving a payout from her own UIM policy. Code § 38.2-2206(K).

for Brown, the policyholder.  And as previously explained, such coverage under these circumstances is not collateral to the tortfeasor's liability.

The insured plaintiff is made whole—for any excess beyond the coverage amount of the tortfeasor—through plaintiff's UIM policy and by recovering any remainder of his judgment directly from the underinsured tortfeasor.  By granting the subrogation right exclusively to the UIM carrier, Code § 38.2-2206 ensures that the UIM policy remains as an additional source of funds to make the insured plaintiff whole even if the carrier waives its subrogation right against the tortfeasor.  Appellant's approach, on the other hand, will only enable double recovery and undermine the purpose of UIM insurance.[12]  For those reasons, I respectfully dissent.

---

[12] As an aside, I note some additional consequences of appellant's approach adopted by the majority.  As a practical matter, UIM carriers sometimes contract away their subrogation rights against tortfeasors.  A UIM carrier, for example, may want to avoid having an insurance company named in the lawsuit.  Alternatively, the UIM carrier may want to ensure that the legal costs of a defense are handled by the tortfeasor's insurance carrier and incentivize the defendant to defend the case in exchange for not exercising its subrogation rights in later proceedings.  And defendant's insurer, acting in accordance with its fiduciary duty to its insured, will likely take that deal.

But appellant's approach, adopted by the majority, guts the subrogation waiver's value as a bargaining tool for facilitating settlements.  Now if the UIM carrier waives subrogation, the UIM payment is not credited against the judgment, and the plaintiff can pursue that amount from the defendant despite the waiver.  The UIM carrier then cannot make any guarantees to defendant or the defendant's insurer.  The majority's approach therefore renders the waiver worthless, making settlements less likely and litigation more contentious and complicated.  *See Mansfield v. Bernabei*, 284 Va. 116, 124 (2012) ("The importance of encouraging compromise and settlement is unquestioned in our jurisprudence.").